AMERICAN NAT. BANK v. PETRY et al.

(Court of Civil Appeals of Texas. Austin. Dec. 6, 1911.)

1. APPEAL AND ERROR (§ 771*)—DISMISSAL—DELAY IN FILING BRIEF.

Though Rev. St. 1895, art. 1417, and Court of Civil Appeals Rule 39 (67 S. W. xvi), require appellant to file his brief in the trial court five days before the filing of the transcript in the Court of Civil Appeals, and said rule makes failure to so file cause for dismissal, dismissal is not required, and will not be granted, where good cause is shown for delay, as continued severe sickness of counsel, preventing compliance.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3105; Dec. Dig. § 771.*]

2. BANKS AND BANKING (§ 165*)—COLLECTIONS—WARRANTS TO TAX ASSESSOR—ASSIGNMENT AND PAYMENT—DEBT OF ASSESSOR TO COUNTY.

A county tax assessor, being indebted to defendant bank, gave to it an order, on the proper authorities, for such warrants as might be issued to him for fees as assessor, and gave a second order to plaintiffs, his deputies, for what he owed them for services, which they indorsed to defendant, and it undertook to collect for them. Thereafter the assessor's warrant, which was for more than enough to satisfy the claims of defendant and plaintiffs, was issued by the State Comptroller, indorsed by the assessor to defendant, and by it collected of the tax collector of the county. Held, that notwithstanding the assessor, unknown to plaintiffs and defendant, owed the county for excess fees, when the warrant was collected, the money when collected became the property of defendant to the amount of its claim, and the excess subject to plaintiffs' claim, and the county owned none of it, so that defendant having paid therefrom to the county what the assessor owed the county, leaving nothing for plaintiffs, and refusing to pay them, was guilty of conversion, and liable to them.

[Ed. Note.—For other cases, see Banks and Banking, Dec. Dig. § 165.*]

3. FRAUDS, STATUTE OF (§ 34*)—AGREEMENT TO ANSWER FOR DEBT OF ANOTHER.

The agreement of defendant bank to collect and pay over to plaintiffs what F. owed them, as evidenced by his written order, indorsed by them to it, is not an undertaking to answer for the debt or default of another, within the statute of frauds.

[Ed. Note.—For other cases, see Frauds. Statute of, Cent. Dig. § 54; Dec. Dig. § 34.*]

4. ASSIGNMENTS (§ 15*)—FEES OF TAX COLLECTORS—PUBLIC POLICY.

The transfer by a county tax assessor to his deputies of his fees in payment of what he owed them for services is not contrary to public policy.

[Ed. Note.—For other cases, see Assignments, Cent. Dig. § 23; Dec. Dig. § 15.*]

Appeal from Travis County Court; R. E. White, Judge.

Action by H. F. Petry and another against the American National Bank. Judgment for plaintiffs. Defendant appeals. Affirmed.

Hart & Patterson, for appellant.

RICE, J. This suit was brought by appellees, plaintiffs below, against appellant to recover the sum of $450, alleged to be due and owing them as deputy tax assessors by their principal, Stewart Francis, tax assessor of Travis county; that their said principal gave them an order for their said salaries on the tax collector of Travis county, which was placed by them in the hands of appellant for collection, who, having collected the same, failed to pay the same over to them; that appellant had promised to

pay them $450 if they would not resign as deputy tax assessors and would finish the tax rolls of Travis county for the year commencing December 1, 1907, and ending December 1, 1908. Appellant answered by general and special demurrers, general denial, and specially pleaded that Stewart Francis was indebted to it in a large sum, to wit, about $3,000, and that he was indebted to Travis county on excess fees in the sum of $915.35; that Francis gave an order to it on the State Comptroller and tax collector of said county for his warrant as tax assessor, which amounted to $3,523.55; that the warrant was turned over to appellant and collected by it, and was not sufficient to pay the debt due by Francis to appellant and the $915.35 owing by him to Travis county; and that the order given by Francis to appellees was subsequent to the order given by Francis to appellant for his warrant; and it was fully understood that the debt due by Francis to appellant was to be paid before appellees were paid. It likewise set up that the agreement pleaded by plaintiffs was void and of no effect, because the same contravened the statute of frauds in this: That it was a promise to answer for the debt or default of another; and, second, that the same could not be enforced, because made by its vice president, who was unauthorized to make such agreement, if any was ever made, and the same was never ratified thereafter by it. The case was tried by the court without a jury, who rendered judgment for appellees for the amount claimed, less some admitted credits to which appellant was entitled. Conclusions of fact and law were filed by the trial court.

[1] Before entering upon a discussion of the merits of this case, we will dispose of appellees' motion to dismiss the appeal, based on the ground that appellant had failed to file a copy of its brief in the trial court, as required by article 1417 of the Revised Civil Statutes of 1895, and had likewise failed to file its brief in this court until the 22d day of November, 1911, which was just one week prior to the submission hereof, citing in support of their motion rule 39 (67 S. W. xvi); rule 42 (67 S. W. xxvii); R. S. art. 1417; W. U. Tel. Co. v. White, 140 S. W. 125; Wiseman v. Maddox, 135 S. W. 756; S. A. & A. P. Ry. Co. v. Holden, 93 Tex. 211, 54 S. W. 751.

Replying to said motion, appellant filed the affidavit of its counsel J. M. Patterson, Esq., stating: That since the filing of this suit he had had exclusive control and management thereof. That said case was a part of his private business, which he had acquired prior to his forming a partnership with W. D. Hart, Esq., in the practice of law, and that throughout the trial and appeal he alone has given this case attention. Although the firm name has been signed to the papers filed therein, it was his individual

business, and his partner, W. D. Hart, Esq., had no part in the case, and knew nothing of it. That he tried said case in person, filed all the pleadings, prepared the appeal, had charge of the filing of the transcript for appellant, the bills of exception, assignments of error, and statement of facts, and that no other attorney had any knowledge of the contents or preparation of said papers, nor any interest or part therein. That he filed the transcript in this case in this court on the 23d day of February, 1911, immediately taking the same out and worked on the brief from time to time until about the middle of September last. That on said date he was engaged in the actual preparation of the brief in this case when he was suddenly stricken with illness, rendering him incapable of finishing same, which illness was of a very serious nature, attacking him on the street, from which he fainted and fell to the sidewalk, striking his head, whereby he was rendered unconscious for several hours. That the physicians who were called in charge pronounced his illness due to overwork, bad health, and rush of blood to the brain, and forbade his working at his profession. That this condition continued for over two months, during which time he was in constant charge of his physician, and that the brief in this case was the first work requiring any mental effort after said stroke, and that the same would have been completed and filed in due time had it not been for said illness and the positive instructions of his physician to the effect that if he attempted to work it would kill him. He further alleged a belief in the merits of his appeal, and suggested that the object of the law would be served by giving appellees a reasonable time within which to reply to his brief, if they desired to do so. This motion was also supported by the affidavit of his physician attached thereto, and he cites in support of the sufficiency thereof Crenshaw v. Hempel, 130 S. W. 731; S. A. & A. P. Ry. Co. v. Holden, 93 Tex. 211, 54 S. W. 751.

Appellees in their motion to dismiss did not request a postponement of the case for an opportunity to answer said brief, but specially stated that they were unwilling for any further delay or postponement of the case, and insisted upon its taking its regular course.

While it is true that article 1417, R. S., and rule 39, supra, required the appellant to file a copy of his brief in the trial court not less than five days before the filing of the transcript in the Court of Civil Appeals, which we find was not done, and while said rule makes the failure on the part of the appellant or plaintiff in error to so file his brief cause for dismissing the appeal, still said rule does not require a dismissal in the event good cause is shown why the same was not complied with. We think the answer of appellant shows a good excuse for its

failure to file its brief in the time required by law. It certainly was never intended by the statute or the rule to impose the grave penalty of dismissal, where the failure to comply with the requirements was due to no fault on the part of appellant or its counsel, but was owing, as in the present case, to the continued illness of its counsel. Appellees had had a week within which to answer the brief, and if they desired more time appellant was willing to accord it to them, but they made no effort to reply to the brief, sought no postponement, but, on the contrary, urged that the case should take its regular course. We therefore, under the circumstances, and for the reasons stated, deem it our duty to overrule the motion to dismiss, which is accordingly done.

With reference to the merits of the case the facts disclose that Stewart Francis was the duly elected, qualified, and acting assessor of taxes for Travis county from November 1, 1906, to November 1, 1908, during which time appellees were his duly qualified and acting deputies. On November 1, 1908, the said Francis, being indebted to the American National Bank, appellant herein, gave to it a written order upon the State Comptroller and tax collector of Travis county for such warrants as might be issued to him for fees as assessor of said county from said date, upon which order the said Comptroller, on the 24th day of November, 1908, issued and delivered to appellant the warrant of Francis for the sum of $3,523.55, which Francis on said day indorsed to appellant, and the latter immediately collected the amount due on said warrant from the tax collector of said county. It further appears that on the 6th of November, 1908, appellees likewise obtained from said Francis an order, directing the tax collector of Travis county to deliver to them his draft to the extent of $450, which appellees indorsed to appellant for collection.

It appears that on the 1st of November of said year said Francis was due said Petry the sum of $290, and the other appellee, W. J. Oliphant, the sum of $150 for past services as deputy tax assessors, and that they had learned that Francis was likewise due the bank about $3,000; and, becoming apprehensive that Francis would not likely pay them, on account of inattention to the business of his office, they determined to resign and turn the office over to his bondsmen. Before doing so, however, they consulted T. H. Davis, the auditor of said county, telling him the above facts and of their intention, and that the tax rolls of the county were not then complete, and that it would require a great deal of work to complete them by the 1st of December. Davis asked them not to resign until he could see the bank and ascertain what Francis was due the bank and what the bank would do about

it, to which they consented. Davis at once saw Mr. R. C. Roberdeau, who was vice president of appellant bank, and likewise county treasurer of Travis county, and apprised him of the fact that Francis had not paid appellees, and of their intention to resign, as well as the condition of the rolls and the amount of work necessary to complete same. Whereupon Roberdeau told him that the bank had an order from Francis on the Comptroller and the tax collector for all warrants that might be issued to him as tax assessor, which would amount to the sum of $3,523.55, which would be more than sufficient to pay off and satisfy the amount that Francis was due the bank, as well as the claim of appellees, and that if they would not resign, but would go ahead and complete and deliver the rolls to the county by the 1st of December, and would get an order from Mr. Francis for what was coming to them, there would be enough in the warrant coming to Francis to pay the bank and what Francis owed them, and that he could collect the same for them if they would get the order. These facts were communicated to appellees, who consented to the proposition and immediately began work upon and completed and delivered the rolls to the county within the time required. They also procured the order above referred to from Francis, as directed by Mr. Roberdeau, and delivered the same to the bank for collection. At this time Francis actually owed the bank the sum of $2,805. On the 1st of December Francis filed his annual report with the county authorities, showing that he was due the county the sum of $915.35 for excess fees; but, at the time that this conversation with Roberdeau occurred, none of the said parties knew of the fact of his indebtedness to the county, nor did they become aware of it until Francis filed his report. It is further shown that appellant, after this report was filed by Francis, to wit, on December 31, 1908, paid to the county out of the amount collected on Francis' warrant the sum of $915.35 shown to be due it by his report, applying the balance thereof to the payment of what Francis was due the bank, which left Francis owing the bank the sum of $196.80, and no part of said $3,523.65 collected on Francis' warrant was ever paid to appellees, although demanded by them. The commissioners' court paid appellees, however, for their services as deputies during the month of November, 1908.

[2] While appellant has urged numerous reasons in its brief for a reversal of this case, it seems to us that it is unnecessary to consider them, since the controversy narrows itself down to the simple question as to whether or not such amount of the excess of the $3,523.55 collected by appellant on the order given by Francis to it, over the amount necessary to pay off and discharge the bank's

claim against Francis, could be subjected to the claim of appellees, or whether the same remained, as contended by appellant, the property of the county on account of the fact that Francis owed the county at the time this warrant was collected by appellant the sum of $915.35 for excess fees, and therefore could not be the subject of transfer by Francis to appellees, as evidenced in this case by the written transfer from Francis to them. We believe that under the facts in evidence, when the bank collected the amount of $3,523.55 from the county by virtue of transfer by Francis of his warrant to it, then so much thereof as was necessary to pay off and satisfy the bank's own claim became the property of the bank, and it had a right under the law to apply a sufficient amount thereof to such purpose. But we further believe that the excess of said warrant, over and above what was necessary to satisfy appellant's claim, became subject to the second order given by Francis to appellees; and under the facts in evidence it became the duty of the bank to pay off and satisfy, out of said balance, said order so given by Francis to appellees. But instead of so doing appellant, under a mistaken conception of the law and its duty, as we understand it, undertook to first pay off and satisfy the amount that Francis was due the county on excess fees, a matter with which, in our opinion, the appellant had no concern, and which act was entirely and wholly unauthorized by the facts in evidence; for which reason we think that appellant's payment of the county's claim was, in effect, a conversion of a fund that absolutely, under the transfer from Francis to appellees, became the property of the latter, and, having failed to pay the same to appellees upon demand, the bank became liable therefor. Hence the judgment of the court below, holding it liable, should be sustained.

[3] The statute of frauds has no application under the facts of this case, because this was not an undertaking on the part of appellant to answer for the debt or default of another, but was merely an agreement on its part to collect and pay over to appellees an amount due them by Francis, as evidenced by the written order indorsed to the bank.

[4] Nor do we think that the transfer, as contended by appellant, of Francis' fees in payment of the claim due by him 'to his deputies, was contrary to public policy. Nor do we think there is any merit in appellant's contention to the effect that the act of Mr. Roberdeau is not shown to have been authorized by the bank.

Finding no error in the proceedings of the trial court, its judgment is affirmed.

Affirmed.