**HARWOOD & ASSOCIATES, INC.,**
**Plaintiff-Appellant,**

v.

**TEXAS BANK AND TRUST, Defendant,**

**First City Bank of Dallas,**
**Defendant-Appellee.**

No. 80–2175.

United States Court of Appeals,
Fifth Circuit.
Unit A

Sept. 3, 1981.

Rehearing Denied Oct. 6, 1981.

Bader & Cox, William D. Cox, Jr., Jackson Wilson, II, Dallas, Tex., for plaintiff-appellant.

Geary, Stahl & Spencer, D. Ronald Reneker, Dallas, Tex., for defendant-appellee.

Before CHARLES CLARK, TATE and WILLIAMS, Circuit Judges.

TATE, Circuit Judge:

This is a Texas diversity action. Harwood & Associates, Inc. appeals from the entry of a judgment notwithstanding the verdict (n. o. v.) setting aside a jury verdict awarding it damages against First City Bank of Dallas for fraud, breach of contract, and breach of a confidential relationship. The district court concluded, relevantly to our decision, that the oral contract found by the jury to have been breached by First City was unenforceable by virtue of the Texas statute of frauds and for lack of legally sufficient consideration. On review, we find that the court below erred as a matter of law in so concluding. Accordingly, the judgment of the district court is reversed.

### Facts

In March of 1977, Reynolds Computer Corporation (Reynolds) approached Harwood & Associates, Inc. (Harwood) regarding the purchase of an NCR computer system for ultimate resale to American Airlines (American). Harwood's banker made a routine credit inquiry about Reynolds at Reynolds' bank, The First City Bank of Dallas (First City).[1] Richard Bartholow, the bank officer in charge of Reynolds' account, responded with a favorable report.

Reynolds and Harwood entered into a sales contract for the equipment on April 4, 1977. At about the same time, Reynolds contracted to resell the same equipment to American. The Reynolds-Harwood contract called for a purchase price of $173,000, with ten percent to be paid immediately and the balance to be paid within five days of installation or the offering of a maintenance agreement to American, whichever occurred later. Harwood was to deliver the equipment directly to American at its Tulsa, Oklahoma, facilities.

Delivery was made in June of 1977. A maintenance agreement was offered to American on June 23, and on June 29 Harwood invoiced Reynolds for the balance due on the sale. On July 12, American presented its check for $193,760.16 to Reynolds. Reynolds deposited that check in its checking account at First City on July 13, with oral instructions to the bank to wire transfer funds in payment of the balance due Harwood to Harwood's account at Pioneer Bank.

---

1. First City was formerly known as the Texas Bank & Trust Company of Dallas.

On July 15, 1977, Harwood discovered that American had made its payment to Reynolds. Harwood informed American that Reynolds had not paid Harwood and that Harwood therefore claimed title to the equipment. As a result, American issued a stop payment order on its check to Reynolds. American informed Harwood and Reynolds that the stop payment order would be lifted only after the problems between Harwood and Reynolds had been resolved.

On that same day, Bartholow (representing First City) informed Harwood by telephone that if Harwood would send a telegram to American effecting the release of American's stop payment order, the bank would transfer funds from Reynolds' account sufficient to pay the balance due on the Reynolds-Harwood sales contract. (The factual dispute regarding this incident was resolved by the jury in Harwood's favor.) Harwood sent a telegram,[2] and the stop payment order was lifted by American on July 15.

On July 16, 1977, Reynolds withdrew its authorization for First City to transfer the funds. The proceeds of the American check were collected on July 18, 1977. Thereafter, Reynolds directed First City to apply those funds to the repayment of loans then outstanding with First City in the amount of $92,765.63.

Harwood was never paid the balance due on its sales contract with Reynolds.

On September 30, 1977, Harwood brought this diversity action in the United States District Court for the Northern District of Texas against both Reynolds and First City. Harwood's claim against Reynolds was dismissed without prejudice prior to trial because of Reynolds' bankruptcy. Harwood proceeded against First City on a theory of breach of contract and on other grounds.

The case was tried to a jury. In a special verdict, the jury found in favor of Harwood on three of its several claims, including that First City had breached an oral contract obliging it to transfer funds from Reynolds' account to Harwood.

First City then moved in the alternative for a judgment n. o. v. or for a new trial. The trial court granted the motion and entered judgment n. o. v. in favor of First City on all claims. From that judgment, Harwood brings this appeal.

### The Breach of Contract Issue

In response to special interrogatories, the jury found (1) that Harwood and First City had entered into an oral agreement that the bank would transfer funds from Reynolds' account to Harwood in exchange for Harwood's sending a telegram to American which would effect the release of the stop payment order on American's check,[3] (2) that First City received consideration for its promise to transfer the funds, (3) that First City failed to perform its obligation under the contract thus formed, (4) that First City's failure to perform was the proximate cause of damage to Harwood, and (5) that Harwood was damaged in the amount of $150,990. The jury also found that Reynolds had instructed First City on July 16, 1977, not to transfer the funds to Harwood.

2. The telegram read:
    Transfer of title for Century 201 through Reynolds Computer to American Airlines is confirmed. Please release stop payment on check to Reynolds Computer.
        Lawrence Harwood, President
        Harwood & Associates

3. The jury's special verdict read:
    Do you find from a preponderance of the evidence that Mr. Bartholow and Mr. Harwood agreed that the Bank would transfer funds from Reynolds Computer Corporation's account to Harwood in exchange for Harwood's sending a telegram to American Airlines which effected a release of the stop payment order that company had issued on its check for payment of the computer equipment and without any further qualification, express or implied.
    Answer either "They did" or "They did not".
    ANSWER: They did.
    You are instructed that an agreement between businessmen includes not only the provisions expressly stated therein but also all other provisions, terms and conditions which, although not expressly stated, are necessarily implied from the context in which the agreement is made.

The trial court concluded, however, that Harwood was not entitled to a jury finding on the breach of contract claim for two reasons. First, the contract found by the jury constituted, as a matter of law, an oral contract of guarantee or suretyship unenforceable under the Texas statute of frauds, Tex.Bus. & Com.Code Ann. tit. 3, § 26.01 (Vernon 1968 and Supp.1980).[4] Second, the consideration given in exchange for the promise of First City to transfer funds to Harwood was insufficient as a matter of law to render that promise enforceable.

On appeal, Harwood vigorously challenges the court's conclusions on this issue. We agree that the trial court erred in this regard, and accordingly we reverse the judgment entered below.

### 1. The standard of review.

The standard by which the granting of a judgment n. o. v. is to be reviewed on appeal is well settled in this circuit.

■ Such judgment should be granted only when the facts and inferences point so strongly and overwhelmingly in favor of the moving party that reasonable men could not arrive at a contrary verdict, viewing the facts in the light most favorable to the party against whom the motion is made, and giving that party the advantage of every fair and reasonable inference which the evidence justifies. The standard for reviewing such motions is the same in the trial court and on appeal. The court considers only the question of law regarding the sufficiency of the evidence to raise a jury issue. *See Houser v. Sears, Roebuck & Co.*, 627 F.2d 756, 757 (5th Cir. 1980); *Boeing v. Shipman*, 411 F.2d 365, 374–375 (5th Cir. 1969) (*en banc*).

### 2. The statute of frauds.

In concluding that Harwood's breach of contract claim was barred by the Texas statute of frauds, however, the trial court did *not* conclude that the evidence was insufficient to create a jury question as to the existence of an oral contract or First City's failure to meet its obligations thereunder. To the contrary, it *accepted* the jury's findings in those regards, but concluded that the contract was unenforceable by virtue of the statute of frauds requirement that promises to answer for the debt, default, or miscarriage of another must be in writing and signed by the promisor. *See* Tex.Bus. & Com.Code Ann. tit. 3, § 26.01 (Vernon 1968 and Supp.1980), quoted in note 1.

■ For reasons to be elaborated, the trial court was in error in so concluding. The oral contract did not constitute a contract of guarantee or suretyship that obliged First City to answer for the debt of its depositor, Reynolds.

The jury found, with substantial evidentiary support, that First City had unconditionally promised to transfer to Harwood funds deposited by Reynolds for that purpose in exchange for Harwood sending a telegram that would effect the release of American's stop payment order. *See* note 3. That promise was not a promise to pay the debt of another, imposing upon First City a collateral obligation to pay Harwood if Reynolds did not, or rendering First City secondarily liable for Reynolds's debt. It was an original undertaking whereby First City assumed the independent obligation to transfer to Harwood—at a time when it was authorized by Reynolds, and indeed duty bound, to do so—a sum owed to Harwood by Reynolds and deposited by Reynolds with First City for that express purpose.

---

**4.** The Texas statute of frauds provides, in pertinent part:

(a) A promise or agreement described in Subsection (b) of this section is not enforceable unless the promise or agreement, or a memorandum of it, is

(1) in writing; and

(2) signed by the person to be charged with the promise or agreement or by someone lawfully authorized to sign for him.

(b) Subsection (a) of this section applies to:

. . . .

(2) a promise by one person to answer for the debt, default, or miscarriage of another person;

. . . .

Tex.Bus. & Com.Code Ann. tit. 3, § 26.01 (Vernon 1968 and Supp.1980).

Under Texas jurisprudence, such a promise does not fall within the ambit of the statute of frauds. *See Jordan v. Crisp*, 278 S.W.2d 482, 485 (Tex.Civ.App.1955) (oral promise to sell goods of third party and to use proceeds to pay third party's debts was original undertaking not within statute of frauds); *Mercantile Nat'l Bank v. McCullough Tool Co.*, 250 S.W.2d 870, 878 (Tex.Civ.App.1952) (oral promise by bank to disburse funds loaned to oil company and on deposit in bank to pay creditors of oil company was original promise not within statute of frauds), *rev'd on other grounds*, 152 Tex. 471, 259 S.W.2d 724 (1953); *American National Bank v. Petry*, 141 S.W. 1040, 1043 (Tex.Civ.App.1911) (oral promise of bank to collect and pay over to creditors sums owed by third party was not promise to answer for debt or default of another within statute of frauds). *See also Gulf Liquid Fertilizer Co. v. Titus*, 163 Tex. 260, 354 S.W.2d 378 (1962); Restatement of Contracts §§ 182(a), 184 (1932); 72 Am.Jur.2d Statute of Frauds § 208 (1974).

Reynolds' subsequent withdrawal of its authorization for the transfer does not alter the essential character of the promise made by First City through its independent oral contract with Harwood. In exchange for Harwood's action in securing the release of American's stop payment order, First City unconditionally promised to transfer to Harwood funds that had been placed on deposit with First City by Reynolds for that express purpose. At the time its promise was made, First City was authorized (and indeed duty bound) to make the promised transfer and it was perfectly free to treat the deposited funds as present and in hand. In making its promise to Harwood, it did just that.

The circumstance that Reynolds subsequently withdrew its authorization for the transfer—after Harwood had fully performed its obligations under the independent agreement with First City—caused First City to breach its own promise under that agreement, but it did not convert First City's primary obligation to make the promised transfer into a secondary obligation to answer for Reynolds' debt. The promise is thus enforceable, although not in writing, as First City's independent primary obligation, if supported by sufficient consideration. 26 Tex.Jur.2d Statute of Frauds §§ 19–21 (1961); Calamari and Perillo, The Law of Contracts 682–86 (2d ed. 1977).

### 3. Consideration.

The jury found that First City had received consideration for its promise to transfer the funds here in question to Harwood. Despite that finding, the district court determined that the consideration given was legally insufficient to render the promise enforceable.

The court began with the proposition that the consideration bargained for, and given, in exchange for First City's promise was the release of Harwood's claim of title to the computer equipment. The court concluded, however, that Harwood's claim of title was invalid—regardless of the validity of Harwood's claim as against its immediate purchaser (Reynolds), American, as a good faith purchaser for value from Reynolds, held valid title as against the unpaid seller Harwood. Uniform Commercial Code § 2–401, Tex.Bus. & Com.Code Ann. tit. 1, § 2.401 (Vernon 1968) (hereinafter cited as Tex.U.C.C.); *In re Samuels & Co., Inc.*, 526 F.2d 1238 (5th Cir. 1976) (*en banc*) Thus, the court reasoned, Harwood's claim of title was invalid and, since the release or waiver of an invalid legal claim is not sufficient consideration to support a contract, the promise was unenforceable. *Phillips Petroleum Co. v. Cargill*, 340 S.W.2d 877 (Tex.Civ.App.1960); *Witherspoon v. Green*, 274 S.W. 170 (Tex.Civ.App.1925); Restatement of Contracts § 76(b).

Substantial portions of both parties' briefs on this appeal are devoted to resolving the question of the passage of title under the UCC. We hesitate to join so metaphysical a debate—and indeed, we need not do so. As the jury expressly found, First City gave its promise on exchange for Harwood's agreement to send a telegram that would effect the release of the stop payment order on American's

check. *See* notes 2 and 3. What First City sought, and what it obtained, was the lifting of that order—and not the release of waiver or any legal claims by Harwood. The lifting of that order directly benefitted First City: It allowed collection of the proceeds of the deposit made by Reynolds, on which some disbursements had already been made, R.IV:360–62, on which the bank was (at the time the promise was made) duty bound to further disburse funds to Harwood, and from which was ultimately discharged the bulk of Reynolds' indebtedness to First City itself. Moreover, the lifting of the order (achieved by Harwood in reliance upon First City's promise) stripped Harwood of its only real protection—the reluctance of American to release its funds in the face of a dispute beyond the unpaid seller (Harwood) and Reynolds, from whom American had purchased the computer system and who was apparently reluctant to pay the balance due on the sale. That benefit to First City and that detriment to Harwood constitute sufficient consideration to render the contract enforceable. *See* Restatement of Contracts §§ 75, 76, 90 (1932); 13 Tex.Jur.2d Contracts §§ 40, 45, 46, 53 (1960).

Our conclusion is not altered by the probability that, as the district court held, Harwood's claim of title as against American would not have been upheld had American contested it. The issue before us is not the enforceability of any promise made by *American* in exchange for the release or waiver of an invalid claim of title adverse to its interests. The only issue before this court is whether Harwood's communication to American requesting the release of American's stop payment order constituted legally sufficient consideration to support *First City*'s promise to pay Harwood from the funds deposited by Reynolds.

The record shows that American had stopped payment on its check because of Harwood's representations that it was Reynolds' unpaid seller—a claim that American, rightly or wrongly, thought to be of sufficient validity to warrant its action in stopping payment on its check, and thus entitling its own unpaid seller to reassert dominion over the goods. Tex. UCC §§ 2.507(b), .511(c); White & Summers, Uniform Commercial Code 114–15 (2d ed. 1980). Whether or not American *could* have resisted Harwood's claim of title by virtue of its status as a good faith purchaser for value, it did not do so. Instead, by stopping payment on its check, American subjected itself to the return of the computer equipment to its unpaid seller and, thus, chose not to assert its position as a good faith purchaser for value.

Under these circumstances, First City cannot escape enforcement of its promise to Harwood (in reliance upon which Harwood relinquished its opportunity to recover the goods for which it had not been paid) by asserting the superiority of American's rights against Harwood, which American itself had chosen to abandon. However, valid or invalid Harwood's claim of title might have been as asserted against American, First City was a stranger to that relationship. This being so, we need not consider whether the release by Harwood of an invalid claim might nevertheless have been sufficient consideration to support a promise given in exchange therefor, if Harwood entertained an honest and reasonable belief in its possible validity. Restatement of Contracts § 76(b) (1932); *cf.* 13 Tex.Jur.2d Contracts § 56 (1960).

For the reasons given, we hold that the consideration given was sufficient.

### Conclusion

We conclude, for the reasons delineated above, that the trial court erred in denying Harwood the benefit of its favorable jury verdict on the breach of contract issue. It is thus unnecessary to consider the remaining issues raised by the parties to this appeal.

Because the district court granted First City's motion for judgment n. o. v., it did not pass upon First City's alternative motion for a new trial. It is therefore appropriate to remand this case so that the court below may consider that motion.

The judgment n. o. v. is REVERSED and the case is REMANDED for further proceedings consistent with this opinion.