**REYNOLDS MANUFACTURING COMPANY, Appellant,**

v.

**Wilebaldo MENDOZA, Appellee.**

**No. 2439CV.**

Court of Appeals of Texas, Corpus Christi.

Nov. 29, 1982.

Stephen P. Dietz, Ewers, Toothaker, Ewers, Abbott, Talbot, Hamilton & Jarvis, McAllen, for appellant.

David Saenz, Selvino Padilla, Texas Rural Legal Aid, Inc., Edinburg, for appellee.

Before BISSETT, YOUNG and KENNEDY, JJ.

## OPINION

BISSETT, Justice.

This is a suit to recover damages for an alleged breach of an employment contract. Suit was instituted by Wilebaldo Mendoza, hereinafter called "Mendoza," against Reynolds Manufacturing Company, hereinafter referred to as "Reynolds." Following a jury trial, and pursuant to jury findings, judgment was rendered in favor of Mendoza in the amount of Four Thousand Six Hundred Thirty-eight and 40/100 ($4,638.40) as damages for "lost wages." Reynolds has appealed.

Reynolds, in its first point of error, contends that the trial court erred in rendering judgment in favor of Mendoza for lost wages because "as a matter of law there can be no recovery for breach of an employment contract which has an indefinite term." Mendoza, in support of the judgment, argues that there can be a recovery of damages for breach of an employment contract which has an indefinite term in a case, such as the instant case, where the employer's handbooks furnished to its employees, operates as a contractual limitation on the employer's power to terminate the employment of its "at will" employees.

The facts are undisputed. The employment of Mendoza by Reynolds was verbal. It was not for a definite term. Mendoza worked for Reynolds, a business concern, from September of 1973 until the time of his discharge on Friday, July 20, 1979. He was discharged by Reynolds after he had informed his foreman and Reynolds' personnel manager that he would not work on Saturday, July 21, 1979. At the time he began working for Reynolds, Mendoza was provided a copy of the company's employee handbook. The handbook was subsequently amended; this amended version was substantially the same as its predecessor.

Mendoza alleged that the handbooks, which were admitted into evidence, constituted a contract between Reynolds and its employees, and that Reynolds breached the contract "in a manner not provided for in its rules" as set forth in the handbooks. He further alleged that, according to the work rules contained in the handbooks, for an offense of the nature of which he committed, he should have been given "a verbal warning for the first offense, a written warning for the second offense and a discharge for the third offense"; instead, he alleged that he was summarily discharged "on what could be considered his first offense."

The handbooks, copies of which were distributed to all employees, cover a broad range of subjects. They set forth various procedures for disciplinary action for violations of the same. Those sections which Mendoza claims constituted contractual limitations upon Reynolds' power to terminate his employment are summarized, as follows: 1) The handbooks provide for a sixty day probationary period, during which the employment of an employee may be "terminated without further cause"; 2) The handbook provides that "seniority will be terminated when an employee ... is discharged for good cause"; 3) Many of the rules, both safety and work, provide for progressive disciplinary procedures, such as verbal warning for the first breach; written warning for the second breach; and discharge

for the third breach. Mendoza, in his brief, argues that "those provisions of the handbook evidence an intent on the part of the employer to contractually limit the manner and procedure by which it fires its employees."

Mendoza worked in the "loading department" at the time he was fired. At that time and for an indeterminate length of time prior thereto, various employees, including Mendoza, from time to time, worked on Saturdays. On Friday, July 20, 1979, at about 4:00 p.m., Mendoza's foreman told him that he wanted him (Mendoza) to work Saturday, the next day. Mendoza said that he could not work that day because he had to stay home and take care of the children since his wife could not be home. Following the conversation between the two, Reynolds' personnel manager sent for Mendoza, who informed him (the personnel manager) that he could not work Saturday, as requested by the foreman. Whereupon, Mendoza was fired.

Mendoza went to work for the Valley Town Crier on January 22, 1980, at $3.10 per hour. He worked part-time for about six months and then worked full-time.

The foreman testified that when it became evident that Mendoza would not work on Saturday, he said to him: "the only choice you give me is to go and talk to Sam (the personnel manager) and if he's got another job or another opportunity for you, you might as well go, because you're not willing to work overtime, you're not willing to work on Saturdays—I mean there's no place in my department; I don't want you, unless you want to work overtime on Saturdays." He further testified that he had ten people in the loading department and that "six of the ten were normally working on Saturdays."

The personnel manager testified that it was essential that all trucks be loaded and out by Saturdays. He further stated that Mendoza told him that "he was unable to work on Saturdays," because "his wife had recently got a job, and that as she was working on Saturdays, he had to stay home and take care of the kids." He also said

that on occasion, men in all of the departments, from time to time, were required to work on Saturdays. After further conversation with Mendoza, the personnel manager testified that Mendoza "was still adamant" and stated that "until further notice, he could not work any further Saturdays." Mendoza was then informed: "we're just going to have to let you go and get somebody else." He was not given either verbal notice or written notice that he had violated any of the "work rules."

■ It is well settled in Texas that, absent any existing contractual limitations, when an employment contract provides for an indefinite term of service, either party may put an end to it at will, with or without cause. *East Line & R.R. Co. v. Scott,* 72 Tex. 70, 10 S.W. 99 (1888); *United Services Automobile Association v. Tull,* 571 S.W.2d 551 (Tex.Civ.App.—San Antonio 1978, writ ref'd n.r.e.); *Ingram Freezers v. Atchison, T. & S.F. Ry. Co.,* 464 S.W.2d 915 (Tex.Civ.App.—Dallas 1971, writ ref'd n.r. e.); *Horn v. Builders Supply Company of Longview,* 401 S.W.2d 143 (Tex.Civ.App.—Tyler 1966, writ ref'd n.r.e.); *Cactus Feeders, Inc. v. Wittler,* 509 S.W.2d 934 (Tex.Civ. App.—Amarillo 1974, no writ).

The rule was stated in *NHA, Inc. v. Jones,* 500 S.W.2d 940, 944 (Tex.Civ.App.—Fort Worth 1973, writ ref'd n.r.e.), as follows:

"The settled law is that where an employee sues his employer for damages for the breach by the employer of an employment contract that is for an indefinite term of service, as are each of the contracts involved here, the loss of wages that would have been earned in the indefinite future is not a recoverable item of damages. This is so because such a contract can be legally terminated at will by either party."

■ While it is an established rule that an employer may contractually limit its ability to terminate the employment of an "at will" employee, as held in *Mansell v. Texas & P. Ry. Co.,* 137 S.W.2d 997 (Tex. Comm'n.App.1940, opinion adopted), and in

*Hardison v. A.H. Belo Corporation,* 247 S.W.2d 167 (Tex.Civ.App.—Dallas 1951, no writ), and relied upon by Mendoza, the facts in the case now before us preclude the application of such rule. In both *Mansell,* and in *Hardison,* there existed by express agreement between the employer and the employee, certain agreement between the employer and the employee, certain procedures for "employee discharge." That is not the case presented in this appeal.

■ Here, there is no evidence of any express agreement which dealt with procedures for discharge of employees, unless the employee handbooks can be read as such. We do not believe that they can be so read. Reynolds was in no way prevented from unilaterally amending or even totally withdrawing its handbook. In fact, the original handbook was amended once during Mendoza's employment. We believe that the handbooks constituted no more than general guidelines. They were by no means comprehensive, nor were they intended to be implemented as the sole means to terminate contracts of employment.

■ We further find nothing in the record to indicate that Mendoza had in his employment any constitutionally protected property interest, as was present in *Glenn v. Newman,* 614 F.2d 467 (5th Cir.1980) and in *Davis v. Nuss,* 432 F.Supp. 44 (S.D.Tex. 1977). The rules of those cases do not control the disposition of this appeal.

We conclude that the verbal contract of employment between Reynolds and Mendoza was for an indefinite term of service; that the handbooks did not contractually limit the manner and procedure by which Reynolds could discharge any employee; that Mendoza did not have a constitutionally protected property right in his continued employment; and that he is not entitled to recover any amount of money for loss of wages sustained by him as a result of his being discharged by Reynolds. Therefore, we hold that the employment contract between Reynolds and Mendoza was legally terminable at the will of either of them; that Reynolds had a lawful right to discharge Mendoza at any time, with or without cause; and that the loss of wages by Mendoza which resulted as a consequence of his being fired is not a recoverable item of damages. Reynolds' first point of error is sustained.

Policy guidelines both favoring and rejecting Mendoza's contention are set forth in 12 A.L.R. 4th 544, at 567–573—Annotation—Modern Status of Rule That Employer May Discharge At-Will Employee For Any Reason. We have not found any Texas cases on the subject. This Court, however, feels that if any change is to be made in the implementation of existing law based upon policy considerations, it should be left up to the Texas Supreme Court, and not to an intermediate court.

Even assuming, arguendo, that the distribution of the handbooks by Reynolds to its employees amounted to a contractual limitation upon its power to fire an employee, there is another reason why the trial court's judgment should be reversed. Reynolds, in its second point of error, contends that there is no evidence to support the jury's answer to Special Issue No. 3, wherein it found that Reynolds "failed to follow the terms" set out in the handbooks "by which their employment relationship is governed." We agree.

■ In addition to what has already been said with respect to the terms and provisions of the handbooks, Section 22 of the amended handbook provides that an employee may be dismissed for insubordination. The section dealing with insubordination does not mandate a verbal warning for the first offense, a written warning for the second offense, and dismissal for the third offense, as is the case in most of the other work rules; rather, dismissal is applicable on the first violation. We hold that the refusal of Mendoza to work on a Saturday after being ordered to do so by his foreman constituted insubordination and Reynolds had a legal right to discharge him from employment without first giving him verbal and written warnings. Reynolds' second point is also sustained.

The judgment of the trial court is REVERSED and judgment is here RENDERED that Mendoza, plaintiff-appellee, take nothing by his suit.