HERMAN E. PUNDT, Plaintiff-Appellant, v. MILLIKIN UNIVERSITY, Defendant-Appellee.

Fourth District   No. 4—85—0555

Opinion filed July 22, 1986.

Gregory L. Barnes, of Brinkoetter & Barnes, P.C., of Decatur, for appellant.

Robert M. Owen, of Owen Roberts, Ltd., of Decatur, for appellee.

PRESIDING JUSTICE McCULLOUGH delivered the opinion of the court:

The plaintiff filed a complaint in the circuit court of Macon County against the defendant for breach of employment contract. His first complaint was dismissed. He filed a first amended complaint, the defendant filed a motion to dismiss and the court found that no set of facts which the plaintiff could plead would entitle him to relief for breach of employment contract. The court entered an order dismissing the first amended complaint with prejudice on July 11, 1985, and the plaintiff has taken an appeal from that order. The issues presented by the plaintiff's appeal are: (1) whether the defendant Millikin University's staff handbook was an employment contract between the plaintiff and defendant; and (2) whether plaintiff's first amended complaint was sufficient to state a cause of action.

Plaintiff was an employee of the defendant, being hired as temporary for a probation period. After successfully completing the probationary period, he was promoted to a permanent, full-time security guard on or about July 1, 1982. After his initial employment and sometime prior to his promotion to a full-time status, he was presented with the handbook. The plaintiff alleged that the Millikin University staff handbook was presented to the plaintiff by the defendant as the employment contract between the university and the plaintiff, that the handbook provided in part:

"The University will, to the best of its ability:

* * *

4. provide security of employment to those who are constantly industrious, loyal, cooperative and honest."

He further alleged that the staff handbook provided and states in paragraph 3.13(2) that an employee may only be terminated for just cause outlined in the handbook or as otherwise determined in the good judgment and fair treatment of Millikin. The plaintiff does not allege the university failed to follow the grievance procedure set forth in its manual granting plaintiff certain rights if his employment was terminated. Section 3.13(2), Termination for Employment, in the handbook provides as follows in part:

"The University's rules concerning dismissal are intended to be general guidelines to good judgment and fair treatment. Just cause for dismissal is not limited to those violations that follow as there may be other offenses committed that may warrant this action depending upon a number of factors. The Uni-

versity reserves the right to make changes to the listing contained in subparagraphs (A) and (B) at any time."

Section 3.5 of the handbook in defining regular full-time employees states that they work "a regular schedule of 32 hours or more per week," that they may participate in university benefit programs, and "may be discharged for cause only." The plaintiff alleged in his complaint that he was terminated without just cause as outlined in the manual, that he had fully complied with the grievance procedures, and had been denied reinstatement or reemployment with Millikin.

The plaintiff argues that *Duldulao v. St. Mary of Nazareth Hospital Center* (1985), 136 Ill. App. 3d 763, 483 N.E.2d 956, should be followed in reversing the decision of the trial court. The issue in *Duldulao* was similar to the instant case and the First District Appellate Court agreed with the decision in *Kaiser v. Dixon* (1984), 127 Ill. App. 3d 251, 468 N.E.2d 822, *appeal denied* (1984), 101 Ill. 2d 582. The *Kaiser* court refused to follow *Sargent v. Illinois Institute of Technology* (1979), 78 Ill. App. 3d 117, 397 N.E.2d 443.

The instant case is similar to *Duldulao* in that the manual was not given to the employee at the time of first employment but during a probation period. *Duldulao* found that "the better-reasoned approach is to bind the employer to the terms in its policy manual when the manual imposes obligations on both the employer and employee, regardless of whether the manual was actually 'bargained-for.' " (*Duldulao v. St. Mary of Nazareth Hospital Center* (1985), 136 Ill. App. 3d 763, 765, 483 N.E.2d 956, 958.) It further found that the manual was binding upon the employer since it did impose obligations on both the employee and employer.

*Piper v. Board of Trustees* (1981), 99 Ill. App. 3d 752, 760, 426 N.E.2d 262, 267, involved a written contract which incorporated the personnel manual. This court stated with respect to the defendant's reliance upon the *Sargent* case:

"There, the plaintiff did not allege a written contract, so it would be impossible to incorporate by reference a personnel manual."

As stated in *Piper*, there was a written contract and it did incorporate the bylaws, policies, rules, and regulations of the board of trustees. In the instant case, there was no written contract and the handbook was not incorporated in any form of contract.

In *Sargent*, the plaintiff contended that the terms of the personnel manual adopted and issued by Illinois Institute of Technology to its employees became an employment contract binding the parties to its terms and relied on *Carter v. Kaskaskia Community Action*

*Agency* (1974), 24 Ill. App. 3d 1056, 322 N.E.2d 574. In *Carter,* the court held that the personnel policy manual adopted by the employers and employees became a part of the employment contract, but it should be mentioned in *Carter* the manual was adopted subsequent to the plaintiff's employment and was considered a modification of the original employment contract. The employer had compiled the manual and reviewed it with the employees who had accepted it. The court found that there was a mutuality of obligation existing for the contract and that by continuing to work under the manual, the employees furnished consideration. The *Sargent* court found:

> "Viewed as a whole, the manual defines the duties and responsibilities of a campus policeman and serves as a code for his conduct. By agreeing to be bound by the guidelines, he has merely agreed to properly perform his required duties and nothing more. Plaintiff provided no additional consideration to support the predischarge hearing requirement and it did not become an enforceable contract." *Sargent v. Illinois Institute of Technology* (1979), 78 Ill. App. 3d 117, 122, 397 N.E.2d 443, 446.

■ Much has been written about personnel manuals and handbooks and their consideration as being a contract between the employee and the company. It has been held that the provisions of an employee handbook were not a part of the employment contract because the employer retained the right to unilaterally amend or even withdraw the handbook. (*Reynolds Manufacturing Co. v. Mendoza* (Tex. Civ. App. 1982), 644 S.W.2d 536.) Also, it has been held that the terms of personnel manuals are not a part of an employee contract, because the employee has not given independent consideration for the promises they contain. (*Johnson v. National Beef Packing Co.* (1976), 220 Kan. 52, 551 P.2d 779.) The determination also must be made as to whether the staff handbook is to be considered as a part of a contract as a matter of law or whether it should be a question of fact to be determined by the jury. The determination of whether the handbook is a part of the contract should be determined as a matter of law by the court.

Here, the plaintiff does not allege that the terms of the handbook were bargained for by the employees. One needs to look at what the purpose of the handbook may be. Is it to provide security to employees and to provide procedure to be followed for discharge or grievance procedures? Is it a statement by the company preparing the handbook as to how they will operate and what they consider the contract to be? There must be some purpose in providing a handbook

other than simply the expense of preparing the same. The staff handbook in its introduction states:

"As an employee of the University, you will want to become informed about the organization within which you will be working—its employment practices, benefits and facilities, the privileges offered and the related responsibilities you will be expected to accept.

This handbook undertakes to provide such information. Hopefully, it will be a useful and convenient source of reference for you."

■ Where an employer, as in the instant case, provides a handbook, states its purpose, indicates that the permanent employee will be discharged for good cause only, and provides what those good-cause reasons are, it cannot say it does not follow the handbook and is not bound thereby.

■ There was no obligation on the part of the defendant university to prepare the staff handbook. It did, and the employee had a right and expectation that the policy manual would be followed.

■ It appears by the reasoning of *Sargent, Duldulao,* and *Kaiser* that to grant the motion to dismiss finding the handbook was not binding on the university was error. The handbook is properly a part of the employee's contract.

The plaintiff's first amended complaint is not a model pleading in form. It does, however, ask damages for breach of contract on the basis that there was not "good cause" for termination of plaintiff's employment. The allegations set forth the existence of the employment contract embodied in the handbook and a breach by the defendant in the wrongful termination of the plaintiff. The plaintiff alleges compliance with the grievance procedure as set forth in the handbook. Counsel do not argue and the handbook does provide that the grievance procedure provided in the handbook is plaintiff's exclusive remedy.

Section 2—612(b) of the Code of Civil Procedure provides in substance as follows:

"No pleading is bad in substance which contains such information as reasonably informs the opposite party of the nature of the claim or defense which he or she is called upon to meet." Ill. Rev. Stat. 1983, ch. 110, par. 2—612(b).

As stated by the supreme court in *Palmateer v. International Harvester Co.* (1981), 85 Ill. 2d 124, 134, 421 N.E.2d 876, 880:

"This complaint is less specific than it could be, but it informed IH of the crux of the claim and stated a cause of action. If IH desires, on remand there are ample procedures under the Civil

Practice Act and the rules of this court to put any needed meat on the bones of the complaint."

The trial court's order dismissing count I was error.

Plaintiff also argues that count II of his complaint alleges a cause of action. It is argued that this is in the nature of an action for retaliatory discharge. As stated by the supreme court in *Barr v. Kelso-Burnett Co.* (1985), 106 Ill. 2d 520, 525, 478 N.E.2d 1354, 1356:

"Contrary to plaintiffs' assertion, however, this court has not, by its *Palmateer* and *Kelsay* decisions, 'rejected a narrow interpretation of the retaliatory discharge tort' and does not 'strongly support' the expansion of the tort. The common law doctrine that an employer may discharge an employee-at-will for any reason or for no reason is still the law in Illinois, except for when the discharge violates a clearly mandated public policy."

In order to determine whether the complaint states a valid cause of action, it must be determined whether the public policy clearly mandated by the cited provisions is violated by the plaintiff's discharge. (*Palmateer v. International Harvester Co.* (1981), 85 Ill. 2d 124, 134, 421 N.E.2d 876, 880.) The supreme court also stated in *Barr* that:

"The application of this test necessarily involves determining what the public policy is behind the enactment or adoption of the particular provision." (*Barr v. Kelso-Burnett Co.* (1985), 106 Ill. 2d 520, 527, 478 N.E.2d 1354, 1357.)

There is no such allegation in the instant complaint and the trial court was correct in dismissing count II of the plaintiff's complaint.

The trial court's order of dismissal of count I is reversed and dismissal of count II is affirmed. The cause is remanded to the trial court for further proceedings consistent with this opinion.

Affirmed in part, reversed in part, and remanded.

WEBBER and GREEN, JJ., concur.