**Linda AIELLO, Plaintiff-Appellee,**

v.

**UNITED AIR LINES, INC.,
Defendant-Appellant.**

No. 86–1403
**Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

June 11, 1987.
Rehearing and Rehearing En Banc
Denied July 22, 1987.

Peveril O. Settle, III, Settle & Settle, Fort Worth, Tex., Kathleen Intini, U.S. Air Lines, Law Dept., Chicago, Ill., for defendant-appellant.

Rod Tanner, James M. Whitton, Watson, Ice, McGee & Liles, Ft. Worth, Tex., for plaintiff-appellee.

Before POLITZ, WILLIAMS and JONES, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

Appellee, Linda Aiello, had been employed by United Air Lines for 18 years until she was discharged in February 1984. She brought suit for breach of a work contract which she claims entitled her to be discharged only upon a showing of good cause. A jury verdict found that she was working under an express contract and also an implied contract and that she had been discharged without good cause. A damage judgment was rendered on the verdict, and appellant, United Air Lines, appeals.

Appellee was originally hired by the appellant in New York and has worked for appellant in several states. The facts involved in this case begin with appellee and her husband being transferred from Fort Lauderdale, Florida, to Dallas-Fort Worth, Texas by appellant under seniority principles contained in company regulations. She was a customer services agent. As part of the transfer she was entitled to the costs of moving the couple's two automobiles from Fort Lauderdale to Dallas-Fort Worth. The Aiellos drove one vehicle to Dallas-Fort Worth from Florida at the cost of $201.70. Appellee then turned in an expense report in which she claimed mileage for transport also of the second automobile at the same cost, although she had not yet at that time driven the second vehicle to Dallas-Fort Worth. She was discharged for submitting a false expense report although her prior record of 18 years with the company was clear and she had never received any disciplinary action of any kind.

Evidence at trial submitted that another employee, Broyles, had done the same thing. The company distinguished his case on the ground that Broyles had pointed out to the same supervisor who discharged appellee that he had not yet moved the second automobile but was filing his final report for moving it. The supervisor had allowed him to do so. Broyles was in exactly the same situation as appellee in that he also had been transferred from Fort Lauderdale to Dallas-Fort Worth at approximately the same time.

Appellee was in an employee position not covered by a collective bargaining agreement. The company has various manuals containing regulations concerning its employees and its relations with them which have been issued from the company headquarters in Illinois. These manuals included a Transfer and Relocation Handbook

which did not specifically forbid anticipatory expense charges. The company also in a general employee handbook had a code of conduct which forbade the filing of false reports. That handbook contained a provision that employees would be discharged only for good cause, and provided an internal grievance procedure ending in a final decision by a company executive.

When appellee was discharged, she invoked the grievance procedure and her discharge was upheld. She then brought this diversity suit in federal court. Since there was no recourse such as an arbitration tribunal for final appeal, her remedy for breach of contract, if any, lies in court.

Appellant takes the position that appellee's employment was an at-will situation under Texas law.[1] It points to an introductory statement in its published regulations that the regulations and policies "are not intended to be, and do not constitute, a contractual arrangement or agreement between the company and its employees of any kind, ... that all employment is 'at will' ".

It is those same regulations, however, that provide that no employee may be discharged without good cause, and United stipulated in its pretrial order that its "personnel policies" prohibited it from discharging an employee without good cause. Appellant claims that it had the right to discharge appellee at will, but in the alternative claims that there was good cause for discharging her for filing a false report. There is testimony in the record by two former United supervisors that in their opinion the rules and regulations were contracts and also impliedly prohibited discriminatory discipline.

The jury was carefully charged by the district judge that contracts can either be express or implied and that contracts can be implied either because of verbal actions or by other conduct. On this charge, the jury answered affirmatively two separate special issues inquiring as to the existence of a "written" contract and also an "implied in fact" contract. The jury also found the company had violated the contract because there was no good cause for appellee's discharge.

In general, Texas unquestionably follows the "at-will" employment tenure in cases in which an employment contract, without more, is of unlimited duration. *Eastline and RRR Co. v. Scott,* 72 Tex. 70, 75, 10 S.W. 99, 102 (1888). The Texas reports are full of cases applying or not applying this particular principle, based upon the facts of the cases. Of particular importance to this case also is the generalized rejection of the claim that employment manuals issued unilaterally by an employer can per se constitute written employment contracts and create specific limitations which take the cases out of the at-will doctrine. Following Texas law we so held in *Joachim v. AT & T Information Systems,* 793 F.2d 113 (5th Cir.1986).

On the other hand, Texas courts and this Court have specifically recognized that such employee manuals, containing specific disciplinary procedures and an employer obligation to discharge only for just cause, can constitute express written contracts, placing obligation on the employer to follow its promise with respect to discharge and discipline. This is particularly true where it can be shown that the company supervisory personnel agreed to or recognized the modification of an at-will concept

1. The district court, applying Texas choice-of-law rules, found that the Texas law controls this case. Neither party challenges this conclusion. It is obviously difficult to attribute an original hiring made a number of years ago in New York, and service in various states, to the law of a particular state. Using the "most significant relationship" approach of the Restatement of Conflicts, which Texas follows (*Duncan v. Cessna Aircraft Co.,* 665 S.W.2d 414 (Tex.1984)), no state in the employment history prior to the state in which the case arises seems to have

sufficient claim of significant contacts to supply the law controlling the contract. The Restatement of Conflicts 2d §§ 188 and 196 emphasize the law of the forum in such a situation.

While the pretrial order in this case made reference to the possibility of the law of Illinois, the headquarters of the corporate appellant, as an alternative to the application of Texas law, the record discloses that no significant issue on the applicability of Texas law was claimed, and none is present on this appeal.

by recognizing the obligation to discharge only for cause.

Perhaps the most significant Texas case applying this principle is *United Transportation Union v. Brown*, 694 S.W.2d 630 (Tex.App.—Texarkana 1985, writ refd n.r. e.). Brown sued her employer for wrongful discharge from her position as secretary to a labor union officer. She had been persuaded to resign from her union to continue to be the secretary of the director of the union after a union merger. Her testimony was that her employer orally promised her that she would be entitled to the benefits of the union's manual of working conditions for employees although she was not a member of a bargaining unit and was not a member of the union. She relied upon the manual which provided in part that no employee would be demoted or discharged without good cause. While the court stated the general at-will rule in Texas, it concluded that the testimony provided the jury with sufficient evidence to establish a contractual limitation on the right of her employer to terminate her. This was true even though the court conceded that the manual could be withdrawn or unilaterally altered by the employer at any time. It should be noted also that the employment contract was of indefinite duration. Thus, under Texas law, an agreement between an employer and employee can modify what would otherwise be an at-will employment arrangement.

Also of significance is the case of *Johnson v. Ford Motor Co.*, 690 S.W.2d 90 (Tex.App.—Eastland 1985, writ refd n.r.e.). In this case Johnson claimed an express oral contract modified by supervisory personnel to provide that he would not be terminated except for good cause. The Court of Appeals held that an at-will situation can be modified by oral agreements with supervisory personnel.

In *Smith v. Kerrville Bus Co.*, 709 F.2d 914 (5th Cir.1983), we held that "a driver's rule book" could be the foundation for the implication of a "just cause provision" in the discharge of a bus driver. While there was a fragmentary collective bargaining agreement in this case, it had nothing to do with discipline or procedures for discipline and thus the Court treated the case as getting only "a minimal degree of security" out of the collective bargaining agreement. We concluded that the rules in the manual constituted a quid pro quo for the receipt of benefits secured by the bargaining agreement. We returned the case to the district court for a jury trial on the merits as to whether such a just cause provision was implied in the rule book and the collective agreement. The jury found that it was not, and we upheld that decision on later appeal. 799 F.2d 1079 (5th Cir. 1986).

We apply these legal principles to the facts of this case. This employee had been an employee of the company for many years, and the record shows no prior blemish in her employment. She moved from Fort Lauderdale to Dallas-Fort Worth because of established seniority principles manifested in the employers manuals and applied throughout the United States. She transferred and moved her automobile and planned to move the other in accordance with the company's specific transfer manual applicable throughout the United States. Finally, the company has issued system-wide a detailed employees handbook which contains a large number of items including a specific "articles of conduct". The grievance procedure for employees in discipline cases is entitled "Suspension from Service and Discharge for Cause." The phrase "good cause" is used elsewhere in the manual. The parties in the pretrial order also stipulated "the personnel regulations and employee handbook provided that no employee would be discharged without good cause." Both the supervisor who discharged appellee and another trained supervisor of the company testified that they viewed the disciplinary procedures and the good cause standard as a contract between the employees and the company.

We do not have in this case, therefore, a mere oral or even written contract for employment at-will. The record is adequate to support the jury's conclusion that we have a written or oral agreement, or a written agreement with oral additions,

which contains a specific contract with binding disciplinary standards and disciplinary procedure. The district court so interpreted the Texas law and submitted the critical issues to the jury under careful instructions. Insofar as the issues involved were factual, we are bound by *Boeing Co. v. Shipman*, 411 F.2d 365, 374 (5th Cir.1969), to view the jury verdict "in the light and with all reasonable inferences most favorable to the party opposed to the (jnov) motion."

Insofar as the question of whether we have in this case a contract which modifies the at-will doctrine because of specific promises by the company upon which employees rely, and about which there is mutuality of obligation, we find support in Texas cases and no cases directly contrary to the holding of the district court. Because of the detailed nature of the company regulations and the understanding that employees and supervisory personnel have with respect to them being part of a binding employment contract, we find that the employment at-will principle does not apply.[2] Under these circumstances, we cannot find that the purported disavowal of the detailed regulations as constituting a

contract, contained in the introduction to the regulations, is controlling. It is a truism in the law that such disavowals are not controlling.

Admittedly, a number of the cases cited by my sister Jones in her dissenting opinion contain language which would seem contrary to our conclusion. It is certainly true that not all "employee handbook" situations in the law are the same. But the seemingly opposite holdings are distinguishable. Thus, *Reynolds Mfg. Co. v. Mendoza*, 644 S.W.2d 536 (Tex.App.—Corpus Christi 1982, no writ), held simply that some handbooks are no more than general guidelines "absent an express reciprocal agreement". And in *Totman v. Control Data Corp.*, 707 S.W.2d 739 (Tex.App.—Ft. Worth 1986, no writ), the employee handbook, which the court purported to hold not binding, was not even in evidence and was greatly lacking in the specificity of the handbook in the case before us. In *Vallone v. Agip Petroleum Co.*, 705 S.W.2d 757 (Tex.App.—Houston [1st Dist.] 1986, writ refd n.r.e.), there was no allegation in the case that the employee handbooks had anything in them delineating procedures

2. An extensive search of the cases indicates that the case closest to the principal case is *Cleary v. American Airlines*, 111 Cal.App.3d 443, 168 Cal. Rptr. 722, (Ca.2d Dr, Div.1, 1980). That case involved an employee who was discharged after 18 years of service with the airline. The California law on the "employment at will" concept is even stronger than the Texas law because it is contained in a specific statutory provision. Cal. Labor Code § 2922. In that case the court found that an agreement either express or implied and written or oral could limit termination to good cause. The court found the employer had foreclosed under such an agreement the right to terminate the employee at will. The opinion emphasized the longevity of the employment relationship and found that the employer's action offended an implied covenant of good faith and fair dealing in the contract. The court held that the company was "estopped" from claiming the right to discharge at will under the facts of that case.

The importance of this California case is that it recognizes that the employers in these cases create extensive and detailed regulations which bind the employees and which purport also to be binding upon themselves. These extensive regulations obviously could lead the employees to think that they are entitled to the rights which the company promises them. But then when the company wishes to do so, it simply takes the position that its promise to discharge only for good cause has no meaning and that the company is free to discharge these longterm faithful employees for any reason, or for no reason, and with no procedural protections.

Of significance to the case before us is the fact that while the company urges the "at will" right to discharge, it did actually recognize the employee's right to assert the lack of good cause and to use the procedures contained in the company regulations. But then, when all this was done, the company now falls back on the "at will" concept when the employee takes the next step in challenging the discharge by bringing a breach of contract suit in court. The strong element of misleading employees as to their rights and then cutting them off after seemingly granting them is, of course, what led the California court in the *Cleary* case to find the company was estopped to claim "employment at will" under the clear and specific California "at will" statute.

We need not consider possible estoppel in this case because the Texas cases indicate flexibility in the Texas law to allow modification of the rigorous application of the at will concept by mutual agreement of the parties reached either explicitly or implicitly.

for discharge. Other cases also involve handbooks which do not contain specific detailed discharge and disciplinary procedures. For example, *see Molder v. Southwestern Bell Telephone Co.*, 665 S.W.2d 175 (Tex.App.—Houston [1st Dist.] 1983, writ refused n.r.e.).

■ The detailed procedures for discipline and discharge are of great significance in this case. The company followed them and notified appellee that she was entitled to them. The supervisor who discharged her treated them as a contract obligation. We uphold the jury verdict in this case finding either a written or oral contract containing specific limiting disciplinary procedural requirements which obviate the application of the Texas "at-will" doctrine.

■ In the alternative, appellant claims that on the merits the discharge of appellee was justified under a good cause standard because of falsification of records. In inquiring into the justification for this jury verdict on the merits, it is unnecessary to go beyond the stipulations of the parties contained in the pretrial order. Only the first four stipulations are omitted because they do no more than establish the residence of the parties and the jurisdiction of the court.

5. In October, 1983, Aiello and Vince Aiello, her husband, were employed by United as Customer Service Agents in its facility in Fort Lauderdale, Florida.

6. Effective October 28, 1983, the Aiellos were involuntarily transferred to United's facility at the Dallas-Fort Worth International Airport in Tarrant County, Texas.

7. As part of United's relocation assistance program for transferred employees, Aiello was eligible for the reimbursement of certain expenses, including expenses resulting from the transportation of both automobiles owned by the Aiellos from the old location to the new location.

8. United's expense reimbursement policy is set out in United's Transfer and Relocation Handbook.

9. In late October, 1983, Aiello drove one of her automobiles from Florida to her new residence in Bedford, Tarrant County, Texas.

10. On October 28, 1983, Aiello reported for work at United's terminal in the Dallas-Fort Worth International Airport.

11. United reimbursed Aiello the sum of $201.70 for mileage and tolls incurred in moving the first automobile from Fort Lauderdale, Florida to Tarrant County, Texas.

12. Aiello submitted an expense report dated January 22, 1984, to her supervisor, Lee Simmons ("Simmons"), by which she claimed mileage and tolls in the amount of $201.70 for the transport of the second automobile from Fort Lauderdale, Florida to Tarrant County, Texas.

13. Aiello had not moved the second automobile when the expense report was submitted and, therefore, the expenses had not actually been incurred at that time.

14. United's Transfer and Relocation Handbook contains no provision expressly prohibiting an employee from claiming expenses before they are actually incurred.

15. On February 6, 1984, Simmons approved the expense report by which Aiello claimed expenses for the second automobile.

16. On February 9, 1984, Simmons asked Aiello whether or not she had actually driven the second automobile from Florida to Texas and Aiello truthfully responded that the automobile had not yet been moved.

17. On February 10, 1984, Simmons met with Aiello in his office to discuss the matter, and he asserted that she had violated company policy by claiming expenses for an automobile that had not yet been moved.

18. During the meeting Aiello told Simmons that she thought she had handled the matter of the expenses in an appropriate manner and that she intended to move the car in the near future, but that she would immediately reimburse United the full amount in question if there was any possibility that she had violated company policy.

19. Simmons refused to accept Aiello's offer to reimburse United.

20. By letter dated February 13, 1984, Simmons discharged Aiello, effective the same date.

21. At all material times Bill Broyles ("Broyles") was employed by United as a Customer Service Agent.

22. Broyles was involuntarily transferred from Fort Lauderdale, Florida to United's Dallas-Fort Worth facility at approximately the same time Aiello was transferred from Fort Lauderdale to Dallas-Fort Worth.

23. On January 30, 1984, Broyles submitted an expense report to Simmons by which he requested reimbursement for expenses relating to the transport of one of his automobiles from Fort Lauderdale to Dallas-Fort Worth when such automobile had not actually been moved.

24. Simmons approved Broyles' expense report even though Simmons knew that Broyles' automobile had not actually been moved.

25. At all times relevant to this action Simmons was acting in the course and scope of his employment with United as Manager of Station Operations.

26. Aiello exhausted all internal administrative remedies prior to the filing of this action.

27. Prior to the events forming the basis of Aiello's discharge United had never questioned her honesty or integrity.

28. Prior to Aiello's discharge United had never taken any disciplinary action of any nature whatsoever against her throughout her entire seventeen year career, and she was regarded as an excellent employee.

29. At all material times United's personnel policies, practices and procedures were established and set forth in the company's written personnel regulations and in an employee handbook which was disseminated to all employees, including Aiello.

30. Several documents in the personnel regulations and the employee handbook related to employee conduct and discipline, including the documents entitled "Articles of Conduct ... Your Responsibility", "Personal Conduct", and "Termination of Employment".

31. The personnel regulations and employee handbook provided that no employee would be discharged without good cause.

We must conclude that there is sufficient evidence favorable to appellee Aiello contained in this stipulation to uphold the jury verdict on the merits that the company did not have good cause to discharge her. Fed.R.Civ.P. 50; *Boeing v. Shipman,* 411 F.2d at 374.

The judgment of the district court, based upon the verdict of the jury, is

AFFIRMED.

EDITH H. JONES, Circuit Judge, dissenting:

I respectfully dissent from the majority opinion. Although the result seems harsh, Texas' employment-at-will doctrine bars recovery by appellee Linda Aiello. Aiello's employment with United Air Lines, Inc. ("United") was for an indefinite period of service and, contrary to the jury's finding, was covered by no express contractual agreement dealing with procedures for discharge. Thus, Aiello was an employee-at-will. According to the at-will doctrine, United could terminate Aiello's employment at any time, with or without cause.

The Supreme Court of Texas, in the early case of *East Line & R.R.R. Co. v. Scott,* held that employment for an indefinite term may be terminated at will and without cause. 72 Tex. 70, 75, 10 S.W. 99, 102 (1888). The courts of Texas have strictly adhered to this holding.[1] The Texas Su-

---

1. In Texas, however, any exception to the employment-at-will doctrine has been very narrow. Statutorily-created exceptions in Texas include: discharge based on filing a worker's compensation claim, Tex.Rev.Civ.Stat.Ann. art. 8307c (Vernon 1967 & Supp.1986); discharge based on membership or nonmembership in a union, Tex.Rev.Civ.Stat.Ann. art. 5207a (Vernon 1986); discharge based on active duty in state military, Tex.Rev.Civ.Stat.Ann. art. 5765 § 7A (Vernon 1986); discharge based on jury service, Tex.Rev. Civ.Stat.Ann. art. 5207b (Vernon Supp.1986);

preme Court's recent decision in *Sabine Pilot Service v. Hauck* re-affirmed the at-will doctrine as expressed in *East Line & R.R.R. Co.* 687 S.W.2d 733, 735 (Tex.1985), even though it concluded public policy requires "a very narrow exception to the employment-at-will doctrine". This narrow exception covers "only the discharge of an employee for the sole reason that the employee refused to perform an illegal act." *Id.* at 735. It is inappropriate for this Court to decide inconsistently with such recent definitive state authority.

Even more recently, in *Joachim v. AT & T Information Sys.*, the Fifth Circuit applied the at-will doctrine. 793 F.2d 113 (5th Cir.1986). In *Joachim*, the plaintiff was terminated for failure to meet a sales quota. The employee argued that he was subjected to job discrimination, including termination, because he is a homosexual. The AT & T personnel handbook, summarizing company policies, provided that sexual preference would not be used as the basis for termination or for job discrimination. However, this court viewed the employee handbook as giving no express contractual right to the employee and as imposing no concomitant obligation on the employer. Hence, guidelines in the employee handbook did not alter the employee's status as an employee-at-will who had no basis for challenging his discharge under Texas law.

The *Joachim* court cited the Texas Court of Appeals' decision in *Reynolds Mfg. Co. v. Mendoza*, 644 S.W.2d 536 (Tex.App.—Corpus Christi 1982, no writ). The *Reynolds* court held that absent an express reciprocal agreement dealing with procedures for discharge, employee handbooks "constituted no more than general guidelines" and did not create contractual rights in the employees. *Id.* at 539. The court in *Joachim* stated that the situation in *Joachim* was identical to that in *Reynolds*. The *Joachim* court continued, "[a]ppellant Joachim cites no Texas cases rejecting *Reynolds*; indeed, he cannot since there are none." *Id.*

*Reynolds* suggests that an employee's at-will status cannot be altered by an im-

plied agreement. Any such agreement must be express. Later cases follow this principle. In *Totman v. Control Data Corp.*, an employee brought a wrongful discharge action and attempted to rebut the employer's summary judgment motion by referring to an employee handbook. 707 S.W.2d 739, 741 (Tex.App.—Fort Worth 1986, no writ). The appellate court stated that the employee could not recover under Texas law because he failed to show the trial court an express agreement or written representation dealing with procedures for discharge of employees. Since he did not show such an express agreement, the employee retained his at-will status. *Id.* at 744.

Similarly, in *Vallone v. Agip Petroleum Co.*, a discharged employee alleged an employee manual represented that no employee could be dismissed except for good and sufficient cause. 705 S.W.2d 757, 759 (Tex. App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.). The court, however, viewed the company manual as creating only an "implied" agreement. *Id.* Citing *Reynolds*, the court stated that employee handbooks, unaccompanied by an express agreement dealing with procedures for discharge of employees, do not create contractual rights regarding those procedures. *Id.* The employee showed no such express agreement.

The issue of employee benefit booklets was also raised in *Molder v. Southwestern Bell Telephone Co.*, 665 S.W.2d 175 (Tex. App.—Houston [1st Dist.] 1983, writ ref'd n.r.e.). In *Molder*, an employee terminated after 28 years with the company filed suit and argued that the employee handbooks should have been admitted into evidence as proof of an employment contract between the employee and his employer. The court likened the handbooks to those found in *Hurt v. Standard Oil Co. of Tex.*, 444 S.W.2d 342 (Tex.Civ.App.—El Paso 1969, no writ). In *Hurt*, the court decided that unsigned employee benefit booklets are insufficient memoranda of a contract of employment and do not satisfy the statute of frauds. 444 S.W.2d at 344–45. Of the

discharge based on discrimination, Tex.Rev.Civ. Stat.Ann. art. 5221k § 1.02 (Vernon Supp.1986).

*Hurt* decision, the court in *Molder* noted that:

> In *Hurt,* the court emphasized that none of the written material contained statements as to the type of work to be performed, or the wages to be paid. The court held that the employee benefit booklets were not directed towards contractually binding the employees, but were designed to retain the employees by their interest in the profits and benefits.... The court held that these references indicated that the employment of the appellant was terminable at will.

665 S.W.2d at 175–76. Since the handbooks in *Molder* were similar to those found in *Hurt,* the *Molder* court decided that the handbooks clearly implied a terminable-at-will arrangement. 665 S.W.2d at 177.

Texas case law, with no present exceptions, holds that even if United had no reason for its discharge of Aiello, the discharge would still not be wrongful under Texas' employment-at-will doctrine.[2] If Aiello had expressly contracted with United for a definite period of employment, the cases indicate the at-will doctrine would not apply. The time period for Aiello's employment, however, was indefinite. Further, United's employee handbooks "constituted no more than general guidelines." I cannot find any similarity between the cases cited by the majority, which involved express oral contracts, and the present case, which glaringly lacks an express promise to Mrs. Aiello. Moreover, unlike the majority, I find no Texas authority which countenances an "implied" employment contract as an exception to the at-will doctrine. To so hold creates a probably fatal breach in the wall Texas has erected in favor of employers. Thus, Aiello was an employee-at-will who has no basis for challenging her discharge under Texas law.

For these reasons, I respectfully dissent.

2. See also *Currey v. Lone Star Steel Co.,* 676 S.W.2d 205 (Tex.App.—Fort Worth 1984, no writ); *Mitsubishi Aircraft Int'l v. Maurer,* 675 S.W.2d 286, 289 (Tex.App.—Dallas 1984, no writ); *Johnson v. Ford Motor Co.,* 690 S.W.2d 90, 93 (Tex.App.—Eastland 1985, writ ref'd n.r.e.); *United Transp. Union v. Brown,* 694 S.W.2d 630, 632 (Tex.App.—Texarkana 1985, writ ref'd n.r. e.).