William Edward HICKS, Appellant,

v.

BAYLOR UNIVERSITY MEDICAL
CENTER, Appellee.

No. 05–89–00451–CV.

Court of Appeals of Texas,
Dallas.

March 30, 1990.
Rehearing Denied May 29, 1990.

**300**

John L. Burke, Dallas, for appellant.

Stephen N. Wakefield, Dallas, for appellee.

Before ENOCH, C.J., and PRESLAR [1] and SMITH [2], JJ.

## OPINION

ENOCH, Chief Justice.

This appeal arises from a suit for wrongful discharge. Appellant, William Edward Hicks, sued his former employer, Baylor University Medical Center (Baylor), after he was released from his position as a janitor. The issues on appeal are: 1) whether Baylor's employee handbook created contractual rights which obviated application of the employment-at-will rule; and 2) whether there is an implied covenant of good faith and fair dealing in the employer-employee relationship. The trial court granted summary judgment for Baylor. We affirm.

### Facts

In November 1982, Baylor employed Hicks for an indefinite period. Subsequently, Baylor distributed an employee handbook to Hicks. On the evening of March 25, 1986, two Baylor security officers alleged that they approached Hicks at work and observed him swallow a marijuana cigarette. Although the security officers searched Hicks, they found no marijuana or other drug on his person. Hicks insists that he did not possess, use, or swallow marijuana at any time during his employment with Baylor. Hicks took a polygraph examination on April 4, 1986, at the request of his employer.[3] During the examination, he again denied the allegations that he used marijuana during his employment with Baylor. On April 7, 1986, Hicks was discharged. Thereafter, he made a claim for unemployment benefits. Baylor opposed the claim and asserted that Hicks was discharged for misconduct connected with his work, which was founded upon the allegation that he possessed or used marijuana.

### Summary Judgment

Following his dismissal, Hicks filed the instant suit. Baylor moved for summary judgment on the following grounds: 1) the

---

1. The Honorable Stephen F. Preslar, Chief Justice, retired, Court of Appeals, Eighth District of Texas at El Paso, sitting by assignment.

2. The Honorable Jackson B. Smith, Jr., Justice, retired, Court of Appeals, First District of Texas at Houston, sitting by assignment.

3. Baylor alleges that Hicks began the polygraph examination concerning his possession or use of narcotics, but that he walked out of the examination prior to its completion. This allegation is not reflected in the record. Hicks asserts, by affidavit, that he took the polygraph examination on April 4, 1986. For purposes of summary judgment review, we accept the facts asserted by Hicks, the nonmovant, and make every reasonable inference in his favor. *See Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985).

cause of action for wrongful discharge is barred because there is no agreement or contract between the parties that limits Baylor's right to discharge Hicks at will, and the circumstances for the discharge do not give rise to any recognized exception to the employment-at-will rule; and, in the alternative, 2) even if an employment contract does exist, there is good cause for discharge because Baylor's policies prohibit the use of marijuana and other illegal drugs. The trial court rendered summary judgment for Baylor.

■ In reviewing the granting of a summary judgment, we must accept as true the nonmovant's summary judgment evidence and make every reasonable inference in the nonmovant's favor. *See Nixon,* 690 S.W.2d at 548–49. To sustain the summary judgment, the movant must establish as a matter of law that no genuine issue of material fact exists. *Sabine Pilot Service, Inc. v. Hauck,* 687 S.W.2d 733, 734 (Tex. 1985). To prevail as a defendant, movant must negate, as a matter of law, one or more elements of each of the plaintiff's causes of action or prevail as a matter of law on a defense to each of the plaintiff's causes of action. *Rosas v. Buddie's Food Store,* 518 S.W.2d 534, 537 (Tex.1975); *Adam Dante Corp. v. Sharpe,* 483 S.W.2d 452, 455 (Tex.1972).

■ When a court's order does not specify the grounds relied on for its ruling, summary judgment will be affirmed if any of the theories advanced are meritorious. *Carr v. Brasher,* 776 S.W.2d 567, 569 (Tex. 1989); *Malooly Bros., Inc. v. Napier,* 461 S.W.2d 119, 121 (Tex.1970). As the trial court in granting Baylor's motion for summary judgment did not specify the grounds relied upon for its ruling, it will be affirmed if Baylor can show that it has negated at least one element of each cause of action asserted by Hicks and that there is no material issue of fact as to the truth of its contentions. *Carr,* 776 S.W.2d at 569; *Borg Warner Corp. v. C.I.T.,* 679 S.W.2d 140, 142 (Tex.App.—Amarillo 1984, writ ref'd n.r.e.).

### Points of Error

Hicks raises nine points of error on appeal. In his first three points of error, Hicks alleges that his employment was not terminable at will. He contends that the employee handbook modified his at-will employment contract and imposed contractual obligations on Baylor to discharge him only upon a showing of good cause and in accordance with the terms of the handbook. In points of error four and five, Hicks claims that the trial court erred in granting Baylor's motion for summary judgment because there are fact issues as to whether either he or Baylor breached the employment contract. In points of error six through eight, Hicks alleges that the employee handbook created a property right in continued employment, and that he was denied due process of the law because Baylor discharged him without following the procedures in the handbook. In his ninth point of error, Hicks asserts that the trial court erred in granting summary judgment because it precluded him from asserting a cause of action for Baylor's breach of an implied covenant of good faith and fair dealing which exists or which should exist within the employer-employee relationship.

### Employee Handbook

We address points of error six through eight first. Texas courts have traditionally followed the employment-at-will rule which provides that, absent any existing statutory prohibitions, public policy exceptions, or specific contract terms or express agreements to the contrary, when an employment contract provides for an indefinite term of service, either party may put an end to it at will, with or without cause. *McClendon v. Ingersoll–Rand Co.,* 779 S.W.2d 69, 70 (Tex.1989); *Eastline & R.R. Co. v. Scott,* 72 Tex. 70, 10 S.W. 99 (1888); *Berry v. Doctor's Health Facilities,* 715 S.W.2d 60, 61 (Tex.App.—Dallas 1986, no writ); *Mitsubishi Aircraft Int'l, Inc. v. Maurer,* 675 S.W.2d 286, 289 (Tex. App.—Dallas 1984, no writ). In the present case, Hicks was employed for an indefinite period and has no basis for challenging his discharge unless the employee handbook gave him a contractual right and

imposed a concomitant obligation on Baylor.

■ Texas courts have consistently held that general company manuals or handbooks, if unaccompanied by an express agreement or written representation regarding procedures for discharge of employees, do *not* constitute written employment agreements immune from the at-will rule. *Benoit v. Polysar Gulf Coast, Inc.,* 728 S.W.2d 403, 406 (Tex.App.—Beaumont 1987, writ ref'd n.r.e.); *Vallone v. Agip Petroleum Co.,* 705 S.W.2d 757, 759 (Tex. App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.); *Totman v. Control Data Corp.,* 707 S.W.2d 739, 744 (Tex.App.—Fort Worth 1986, no writ); *Reynolds Mfg. Co. v. Mendoza,* 644 S.W.2d 536, 539 (Tex.App.—Corpus Christi 1982, no writ); *see also Joachim v. A.T. & T. Information Sys.,* 793 F.2d 113, 114 (5th Cir.1986) (guidelines in an employee handbook did not alter the status of employee who was employed for indefinite period after one year of training, and, thus, employee was an employee-at-will who had no basis for challenging his discharge under Texas law).

The court in *Reynolds* rejected the claim that the employee handbook gave the employee a protectable contract right in continued employment, relying, in part, on the fact that Reynolds retained the right to amend or withdraw the handbook. The court held that absent an express reciprocal agreement dealing with procedures for discharge, employee handbooks "constituted no more than general guidelines" and did not create contractual rights for employees. *Reynolds,* 644 S.W.2d at 539. In *Berry,* this Court held that an employee handbook does not circumscribe an employer's ability to dismiss an employee-at-will, where the employee signed a form acknowledging receipt and reading of a handbook which contained express disclaimers that it did not constitute an employment agreement and which indicated that it was subject to unilateral change by the employer at any time. *Berry,* 715 S.W.2d at 62.

■ The identical situation exists in this case. In connection with the receipt of the employee handbook, Hicks signed an acknowledgment card that specifically stated that the employee handbook did not constitute a contract of employment and that the information in the handbook was subject to change and could be modified, superceded, or even eliminated at any time. The acknowledgment card, signed by Hicks and dated August 5, 1983, contains the following language:

I have received my copy of the employee booklet for Baylor University Medical Center, which outlines the policies of the medical center and my responsibilities as an employee. I will read the information in this booklet and *I understand that the information contained in it does not constitute a contract between me and the medical center.*

Since the information in this booklet is subject to change, it is understood that any changes in Medical Center policies may modify, supercede, or eliminate the policies listed. Medical Center personnel will be notified of any policy changes through the usual channel of communication.

(Emphasis added.)

Baylor's employee handbook contained provisions for a three-month probationary period and a general grievance procedure for its employees. The handbook Hicks acknowledged receiving in 1983 was superceded by a 1986 handbook. The 1983 handbook provided that "[e]mployment *may* be terminated by 3 methods other than retirement: (a) resignation, (b) mutual agreement or request, and (c) immediate discharge." (Emphasis added.) The 1986 handbook provided that, "[t]ermination *may* occur by retirement, resignation, mutual agreement or immediate discharge." (Emphasis added.)

Hicks contends that an employee manual or handbook, in limited situations and when considered with other factors, may constitute an express or implied contract between the employer and employee. Hicks relies heavily upon *Aiello v. United Air Lines, Inc.,* 818 F.2d 1196 (5th Cir.1987), for this proposition. The court in *Aiello* held that where an employer's manual or handbook contains detailed procedures for

discipline and discharge *and* expressly recognizes an obligation to discharge only for good cause, a contract modifying the at-will rule may be found. *Aiello*, 818 F.2d at 1198. In enforcing the contract, the court based its holding upon facts of "great importance" in that case: the employer stipulated that its personnel policies prohibited discharge without good cause, the employer had followed the procedures in the handbooks and had notified the employee that she was entitled to them, and the employee's supervisors testified that they regarded such procedures as a contract obligation.

We need not decide whether *Aiello* correctly applied Texas law. *Aiello* is distinguishable. Dissimilar to the instant case, the employer in *Aiello* admitted the existence of an employment contract other than one at-will; Baylor has not. The employee in *Aiello* testified that the employee manual created an employment contract. Hicks, however, formally acknowledged that the employee manual did not create an employment contract. Further, the employee manual and handbook in *Aiello* provided very detailed discipline and discharge procedures which the employer followed and which the employee's supervisors regarded as a contractual obligation. Such is not the case here. Baylor's handbook was by no means comprehensive, nor was it intended to be implemented as the sole means to terminate contracts of employment. The handbook in *Aiello* contained express provisions that the employee could be discharged *only* for good cause; there are no such representations in Baylor's handbook. We hold that Baylor's handbook did not act to create a property right of continued employment. We overrule points of error six through eight.

Hicks, however, in points of error one through three, further asserts that an agreement between an employer and employee can modify an at-will employment arrangement in limited situations under Texas law. In *United Transportation Union v. Brown*, 694 S.W.2d 630 (Tex.App. —Texarkana 1985, writ ref'd n.r.e.), the employee was persuaded by her supervisor to resign from her union so that she would remain in her position as secretary and continue to work for her prior supervisor after a union merger. She testified that her supervisor orally promised her that she would be entitled to the benefits of the union's manual of working conditions for employees, even though she would not be a member of the union. The manual provided that no employee would be demoted or discharged without good cause. Under those facts, the court held that a valid contractual limitation existed by agreement of the parties which imposed upon the employer's ability to discharge the employee without cause. *See also Johnson v. Ford Motor Co.*, 690 S.W.2d 90, 93 (Tex.App.— Eastland 1985, writ ref'd n.r.e.) (holding that an at-will employment situation was modified by an oral agreement with supervisory personnel, who had the authority to make the modification).

Again, the present case can be distinguished. Hicks does not allege an agreement with his supervisor or rely upon oral representations concerning the terms and conditions of employment. Rather, Hicks alleges the existence of an express or implied contract which circumscribes his at-will employment, based solely upon Baylor's employee handbook. We discern no basis upon which the term of Hick's employment can be found to be anything other than at-will, nor do the circumstances of his discharge give rise to any recognized exception to the rule that an at-will employee may quit or be fired without liability and without cause. Accordingly, we overrule points of error one through three, and, consequently, we do not reach points of error four and five.

### Implied Covenant of Good Faith and Fair Dealing

Hicks's contention in point of error nine that this Court should recognize and enforce an implied covenant of good faith and fair dealing in the employer-employee relationship is not a proper matter for our consideration. The supreme court expressly rejected an invitation to recognize such a rule. *McClendon*, 779 S.W.2d at 70 n. 1; *English v. Fischer*, 660 S.W.2d 521, 522

(Tex.1983). An intermediate court is duty-bound to follow the Texas Supreme Court's authoritative expressions of the law and to leave changes in the application of the common law rules to that court. *See Swilley v. McClain,* 374 S.W.2d 871, 875 (Tex.1964); *Lumpkin v. H & C Communications, Inc.,* 755 S.W.2d 538, 540 (Tex.App.—Houston [1st Dist.] 1988, writ denied). Therefore, we overrule Hicks's ninth point of error.

The trial court's judgment granting summary judgment is affirmed.