Richard C. SPULER, Plaintiff-Appellant,

v.

Gertrud B. PICKAR, James H. Pickering, A. Benton Cocanougher, Richard L. Van Horn, and the Board of Trustees of the University of Houston, Defendants-Appellees.

No. 90-2408.

United States Court of Appeals,

Fifth Circuit.

April 14, 1992.

Appeal from the United States District Court for the Southern District of Texas.

Before DAVIS, JONES, and EMILIO M. GARZA, Circuit Judges.

EDITH H. JONES, Circuit Judge:

Plaintiff Richard Spuler brought suit against the University of Houston, alleging that he was denied due process of law in being refused tenure and terminated. A jury awarded damages, after finding that Spuler had a reasonable expectation of continued employment and that the defendants acted arbitrarily and capriciously in denying tenure and in discharging him. The court granted defendants' motion for judgment notwithstanding the verdict. Spuler appeals from that ruling. We affirm.


FACTS

In 1980, Spuler was appointed an assistant professor in the German Department at University of Houston. He was subsequently re-appointed each year. In August 1985, at the end of Spuler's fifth year at the University, Dr. Gertrud Pickar, the German Department chairwoman, notified Spuler that his contract would not be renewed after the 1985-86 school year. Financial reasons were

offered as the basis for the decision.

Understandably unhappy with the decision, Spuler asked that he undergo the tenure approval process so that he might represent to potential employers that he was being considered for tenure. The respective departmental and college tenure committees obliged and found that Spuler had complied with tenure requirements and was eligible for tenure consideration. Tenure decisions are evaluated according to performance in the areas of teaching, research, professional scholarship, and institutional service. The University's faculty handbook states "tenure is granted to faculty members upon the successful completion of a probationary period [at] the university...." Initial screening and evaluation is conducted by the respective department and college, with a recommendation transmitted to the university Provost and President. The ultimate decision to grant or deny tenure is made by the Board of Regents, upon recommendation of the President.

The jury found that the University's rules and regulations created a reasonable expectation of continued employment for Spuler. The jury also found that the department chairwoman and the other defendants acted arbitrarily and capriciously in not recommending tenure and in discharging Spuler. They awarded $13,279 in damages against the department chairwoman and $39,837 in damages against Dr. James H. Pickering, dean of the College of Humanities and Fine Arts. The jury also assessed $542 in damages against both the University Provost, A. Benton Cocanougher, and the

University President, Richard L. Van Horn, both of whom concurred in the recommendation to deny tenure to Spuler.

Shortly after Spuler left the University, a tenured professor resigned from the German Department. Spuler was not offered the position, and the vacant position remained unfunded for two successive years. However, two months after Spuler departed, the University advertised nationally for a German professor. The University explained that Spuler was a linguistics expert and taught elementary courses, while the professor who resigned was a professor of German literature. Although the basic language acquisition courses could be taught by any German Department faculty member, specialized knowledge—which Spuler lacked—was needed to teach the literature classes.

In ruling on defendants' motion for judgment notwithstanding the verdict, the trial court held that Spuler enjoyed no property interest in continued employment at the University, since Spuler was employed on a year-to-year contract. The court further held that the University was entitled to deny Spuler tenure. The court also held that the tenure denial decision was reasonable, and not arbitrary and capricious, being based on legitimate financial considerations.

## STANDARD OF REVIEW

A judgment notwithstanding the verdict (JNOV) should be granted by the trial court

only when the facts and inferences point so strongly and overwhelmingly in favor of the moving party that reasonable jurors could not arrive at a contrary verdict, viewing the facts in the light most favorable to the party against whom the motion is made, and giving that party the advantage of every fair and reasonable inference which the evidence justifies.

*Harwood & Assoc., Inc. v. Texas Bank & Trust,* 654 F.2d 1073, 1076 (5th Cir. Unit A, September 1981) (citing *Boeing v. Shipman,* 411 F.2d 365, 374–75 (5th Cir.1969) (en banc)).  On appeal, we apply an identical legal standard, viewing the evidence in the fashion most favorable to the party opposing the motion.  *Ellison v. Conoco, Inc.,* 950 F.2d 1196, 1203 (5th Cir.1992).  Thus, we may affirm the district court only if we find that no reasonable jury could have determined that Spuler was entitled to a reasonable expectation of continued employment, or that he was discharged arbitrarily and capriciously.


PROPERTY INTEREST

The threshold issue is whether Spuler held any constitutionally-protected property right.  *Baker v. McCollan,* 443 U.S. 137, 146–47, 99 S.Ct. 2689, 2695–96, 61 L.Ed.2d 433 (1979). The nature of Spuler's claim of property right must be determined by reference to Texas law.  *Board of Regents v. Roth,* 408 U.S. 564, 568, 92 S.Ct. 2701, 2704, 33 L.Ed.2d 548 (1976).  If there is no protected property interest, there is no process due, *i.e.,* the status is employment at will, modified by annual contracts.  *Roth,* 408 U.S. at 569, 92 S.Ct. at 2704.


Public employees must demonstrate a property right founded on

a "legitimate claim of entitlement" based on "mutually explicit understandings." *Roth,* 408 U.S. at 577, 92 S.Ct. at 2708; *Perry v. Sinderman,* 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972). Spuler claims that he had a reasonable expectation of achieving tenure if he was qualified, and that alone constitutes a legitimate property interest. He bases his claim on the faculty handbook provision. The University counters that the handbook, under ample Texas precedent, cannot give rise to an employment contract where the handbook is not accompanied by an express agreement regarding discipline and discharge.

Spuler premises his assertions that the faculty manual contractually creates enforceable property rights on *Aiello v. United Airlines, Inc.,* 818 F.2d 1196 (5th Cir.1987). In *Aiello,* a long-term employee with a stellar record was discharged for falsifying an expense voucher. *Aiello* must be understood as a case in which all parties to the suit treated the employment manual as giving certain contract rights, including the right to be discharged only for specific, enumerated reasons. The court relied on Texas cases in which express oral promises were offered and later construed as implied contract provisions. *See, e.g., Union v. Brown,* 694 S.W.2d 630 (Tex.App.—Texarkana 1985, writ ref'd n.r.e.); *Johnson v. Ford Motor Co.,* 690 S.W.2d 90 (Tex.App.—Eastland, writ ref'd n.r.e.). Texas state courts, whose decisions must inform our determination of Spuler's claimed property right, *Roth,* 408 U.S. at 568, 92 S.Ct. at 2704, uniformly embrace the notion that employee handbooks or manuals, standing

alone, "constitute no more than general guidelines," absent express reciprocal agreements addressing discharge protocols. *Reynolds Mfg. Co. v. Mendoza,* 644 S.W.2d 536, 539 (Tex.App.—Corpus Christi 1982 no writ). *See also Ryan v. Superior Oil Co.,* 813 S.W.2d 594, 596 (Tex.App.—Houston [14th Dist.] 1991, writ denied); *Hicks v. Baylor Medical Univ. Med. Center,* 789 S.W.2d 299, 302 (Tex.App.—Dallas 1990, writ denied); *Benoit v. Polysar Gulf Coast, Inc.,* 728 S.W.2d 403, 406 (Tex.App.—Beaumont 1987, writ ref'd n.r.e.); *Vallone v. Agip Petroleum Co.,* 705 S.W.2d 757, 759 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.); *Totman v. Control Data Corp.,* 707 S.W.2d 739, 744 (Tex.App.—Ft. Worth, no writ); *Molder v. Southwestern Bell Tel. Co.,* 665 S.W.2d 175 (Tex.App.—Houston [1st Dist.] 1983, writ ref'd n.r.e.).

The foregoing cases all illustrate the consistency with which Texas courts have adhered to the employment-at-will doctrine first enunciated in *Eastline & R.R.R. Co. v. Scott,* 72 Tex. 70, 75, 10 S.W. 99, 102 (1888). This doctrine has borne the test of time, being eroded by only a few narrow statutory and judicially created exceptions not present in this case. The ineluctable conclusion that under Texas law employment manuals generally do not create contract rights guides our resolution of Spuler's property interest claim.

We now turn to the specific language upon which Spuler premises his claim to a constitutionally-protected property right. The faculty manual provides, in pertinent part:

Faculty members are on probationary appointments until they have been granted tenure. During the probationary period, decisions to renew or terminate appointments or to deny tenure shall be made at the campus level in accordance with the principals and procedures set forth in this Handbook. Tenure is awarded only at the specific campus of the university.

Tenure is granted to faculty members upon the successful completion of a probationary period on the University Park campus. The service of tenured faculty shall be terminated only for adequate cause, except in cases of financial exigency, discontinuance of programs, or retirement because of age.

The decision to terminate the services of a non-tenured faculty member is not a form of dismissal for cause. Non-reappointment of a faculty member without tenure does not require charges or demonstration of professional unfitness.

The faculty handbook's preface states that it is intended "to be only a guide for faculty of the University of Houston-University Park. It does not purport to be a comprehensive, self-contained policy document...."

The unadorned language regarding tenure, as quoted above, is indicative rather than imperative. In harmony with well-established Texas law, we hold that the University's faculty handbook did not create a property right in continued employment or an assurance of tenure. The handbook was not a written employment agreement, and was not supplemented or supplanted by any express agreement or written representation regarding termination procedures. Because the faculty handbook bestowed no contractual rights on Spuler and no concomitant obligations on the University, and because Spuler points to no other source of entitlement to tenure, Spuler enjoyed no property interest the deprivation of which merited procedural or substantive due process protection. Establishment of a formal tenure process generally "precludes a

reasonable expectation of continued employment" for non-tenured faculty. *Edinger v. Board of Regents of Morehead State Univ.,* 906 F.2d 1136, 1140 (6th Cir.1990), *accord Lovelace v. Southeastern Mass. Univ.,* 793 F.2d 419, 423 (1st Cir.1986); *Eichman v. Indiana State Univ. Bd. of Trustees,* 597 F.2d 1104, 1109 (7th Cir.1979). *See also Dube v. The State Univ. of New York,* 900 F.2d 587 (2d Cir.1990), *cert. denied,* --- U.S. ----, 111 S.Ct. 2814, 115 L.Ed.2d 986 (1991); *Goodisman v. Lytle,* 724 F.2d 818 (9th Cir.1984); *Beitzell v. Jeffrey,* 643 F.2d 870 (1st Cir.1981).

Spuler nonetheless asserts that he was entitled to a non-arbitrary and capricious decision on tenure. In *Honore v. Douglas,* 833 F.2d 565, 568 (5th Cir.1987), this court acknowledged the possibility of a substantive due process claim to tenure *if* Honore also proved that he had a property interest in obtaining tenure. Even if the latter condition were satisfied, we disagree that Spuler's evidence fulfilled the demanding standard for a substantive due process violation. The tenure process—from the initial recommendations of the candidates by the professoriat to the ultimate review by university administrators and members of the Board of Regents—is intrinsically subjective. Such a determination is not readily scrutinized in the adversarial judicial forum. "The judicial inquiry is properly only whether the decision was made, wisely or not, by a specific exercise of professional judgment and on the basis of factors clearly bearing on the appropriateness of conferring academic tenure." *Siu v. Johnson,* 748 F.2d 238, 245 (4th Cir.1984). The only substantive process due Spuler, assuming

he had a property interest, was the exercise of professional judgment, in a non-arbitrary and non-capricious fashion.

Spuler asserts that the University administrators, particularly the head of the German Department and the dean of the College of Humanities and Fine Arts, acted arbitrarily and capriciously in recommending against tenure. Spuler notes that at about the time he was terminated, a tenured professor left the German Department and the University launched a nationwide replacement search. He raises this point as evidence countering the University's assertion that declining enrollment in the German Department and the corresponding budgetary restrictions were the reasons that Spuler was not offered tenure. The department chair, the college dean, and the University Provost each testified that Spuler was not granted tenure because of financial reasons. The department chairwoman testified that the department's financial circumstances necessitated a decision between approving Spuler for tenure or continuing the graduate program in German studies. She stated that elimination of the graduate program would have resulted in even more austere funding for the German Department, and would have critically injured the German program. Although the University sought to replace the professor who departed shortly after Spuler, the open position required a scholar with the ability to teach the more specialized literature courses, a qualification Spuler lacked. Given the overwhelming evidence of a rational basis to support the decision to deny tenure to Spuler, we sustain the district court's determination that no reasonable juror could find

that the University officials acted arbitrarily and capriciously in denying tenure to Spuler.[1]

QUALIFIED IMMUNITY

We review *de novo* the legal conclusion that the University defendants were entitled to qualified immunity from suit. Because we hold that Spuler had no constitutionally protected property interest, and that he was not dismissed arbitrarily and capriciously, we need not determine whether the trial court erred in granting qualified immunity to the defendants. Notwithstanding, court challenges associated with denial of tenure persist; and the affirmative qualified immunity defense rests on whether public officials have violated a clearly-established right. To that end, we note that, in future challenges, officials formulating tenure decisions in circumstances similar to the instant case will likely benefit from qualified immunity.

That Spuler cites no legal authority in his challenge to the trial court's grant of qualified immunity presages the merits of this argument. To succeed in his challenge to the defendants' qualified immunity, Spuler must show that at the time the University determined to terminate his contract, a reasonable university official would have known that termination under like

---

[1]Spuler also argues that the University could not deny him tenure unless University officials had declared a financial exigency. However the evidence at trial unequivocally established that the University policy required a declaration of financial exigency to terminate an *already tenured* professor, absent good cause, and not to deny tenure to a candidate.

circumstances would have violated Spuler's due process rights. In sum, Spuler would have to show that a non-tenured professor had a clearly-established, constitutionally-protected interest in continued University employment, and that denying him tenure for financial reasons was arbitrary and capricious. *Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 819, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)), *see also Dube,* 900 F.2d at 597. As has been shown, Spuler had no constitutionally-protected interest at the time of his termination. We agree with the district court that the University defendants were entitled to qualified immunity.

## CONCLUSION

As a matter of law, Spuler failed to prove the existence of any constitutionally-protected interest in achieving tenure. The district court properly granted judgment notwithstanding the verdict in favor of the defendants. The defendants did not violate any clearly established constitutional rights and were thus entitled to qualified immunity. The decision of the district court is AFFIRMED in all respects.