Belinda OWENS, Plaintiff,

v.

BOARD OF REGENTS OF TEXAS SOUTHERN UNIVERSITY, Bobby Wilson, James W. Ward, and Merline Pitre, Defendants.

Civil Action No. H–94–2817.

United States District Court,
S.D. Texas,
Houston Division.

July 3, 1996.

Patrick J. Gilpin, Patrick J. Gilpin & Associates, Houston, TX, for Plaintiff.

Renaldo L. Stowers, Allison Hays Eccles, Office of Texas Attorney General, and Wyck Hebert, Asst. Atty. Gen., Austin, TX, for Defendants.

## MEMORANDUM AND ORDER

ATLAS, District Judge.

### Introduction

Pending before the Court are Defendants' Motion for Summary Judgment [Doc. # 19], Plaintiff's Cross Motion for Partial Summary Judgment [Doc. # 29], Defendants' Motion for Continuance of Trial Setting and Request for Preferential Setting [Doc. # 37], Plaintiff's Motion to Vacate Certain Portions of Order entered June 5, 1996 [Doc. # 40], and Plaintiff's Second Motion for Leave to File Amended Original Complaint out of time and to add the President of Texas Southern University as a Party in his Official Capacity [Doc. # 41].

In essence, Plaintiff Belinda Owens ("Owens" or "Plaintiff") claims in this suit that she was granted "*de facto* tenure" by Defendant Texas Southern University ("TSU" or "University") as a result of its failure to explicitly deny her tenure on a timely basis. Plaintiff contends that TSU thus denied her procedural and substantive due process (among other claims) in violation of the Fourteenth Amendment to the United States Constitution, for which she allegedly is entitled to monetary damages (presumably from the officials of TSU named as Defendants in their individual capacities) and injunctive relief from TSU in the form of reinstatement as a tenured faculty member. While the Court has serious concerns about the legal, factual and public policy viability of Plaintiff's theories and the relief she seeks, the Court cannot grant summary judgment on the existing record as to the due process claims asserted. There appear to be certain fact issues that require resolution by trial. As to all Plaintiff's other claims, summary judgment is granted in favor of Defendants. Thus, Defendants' Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART.

Plaintiff's Second Motion for Leave to File Amended Original Complaint out of time and to add the President of Texas Southern Uni-

versity as a Party in his Official Capacity is GRANTED.

Plaintiff's "Motion to Vacate Certain Portions of Order entered June 5, 1996" is GRANTED. The Court erroneously found that Plaintiff's Cross Motion for Partial Summary Judgment had been denied by Judge Lake. However, for the reasons discussed below, Plaintiff's Cross Motion for Partial Summary Judgment is now DENIED.

Finally, Defendants' Motion for Continuance and for Preferential Setting is GRANTED IN PART.

## I. *FACTUAL BACKGROUND*

The summary judgment record establishes the following:

Dr. Mary Belinda Owens ("Owens") joined the Department of Communications at Texas Southern University ("TSU") as a non-tenured, tenure-track faculty member in October 1985. Owens was eligible to apply for tenure during the sixth year of her probationary period, which, pursuant to University guidelines in effect both when she was hired and when she applied for tenure, was not to exceed seven years.

Although there is a dispute in this case about which faculty manual governed Owens' application for tenure, the notice provisions in both the manual in effect in 1985 and the manual promulgated in 1987 stipulate that, "[n]o later than December 1st of the next-to-last year of probationary service, the Dean of each school shall notify all faculty members who are entering their final year of probationary service of their status and of the criteria and procedures for granting tenure." Defendants' Exh. A, at 26.[1] Merline Pitre ("Pitre"), Dean of the College of Arts and Sciences, notified Owens in December 1991 that she should submit her application for tenure that academic year. Defendants characterize the 1991–92 academic year as the next-to-last year of Plaintiff's probation-

ary service. Defendants' Motion for Summary Judgment, at 3. Because she was hired in October 1985, however, Plaintiff argues that her sixth or penultimate year was the 1990–91 academic year.

Owens submitted a request for tenure on January 30, 1992. The Communications Department Rank, Promotion and Tenure Committee recommended denial of tenure and forwarded Owens' application to Dr. James Ward ("Ward"), the Chairmen of the Department of Communications. Ward also recommended denial of tenure and forwarded Owens' application to Pitre, who, concurring in Ward's recommendation, forwarded Owens' application to Dr. Bobby Wilson ("Wilson"), Provost/Vice–President of Academic Affairs. Wilson agreed with the department and college-level recommendations and, on May 11, 1992, wrote to Owens informing her of his decision to recommend denial of tenure. The letter apparently also advised her of her right to appeal this recommendation to the University Rank, Tenure, Promotion and Salary Committee.[2] Owens acknowledges receiving Wilson's letter but argues that it did not comport with specific notice requirements in the faculty manual, which mandate that, if an application for tenure is denied, the applicant must be informed by the Office of the President that the following year will be her last year at the University. Plaintiff's First Amended Original Complaint, at 4. Apparently, Owens did not avail herself of the opportunity to appeal Wilson's recommendation at the University level.

By letter dated May 31, 1992, Owens was notified by the Office of the President, William H. Harris ("Harris"), that her request for tenure was denied, and that the 1992–93 academic year would be the last year of her employment at TSU. Owens contends that she never received this letter, because, despite the fact that the University had Owens' current address on file, *see* Plaintiff's Exh. 21, the letter was mailed to an address from

---

1. The comparable section in the 1985 manual substitutes "the procedures and requirements for granting tenure" for "the criteria and procedures for granting tenure." Plaintiff's Exh. 11, at 48–49.

2. The May 11, 1992 letter from Wilson to Owens has not been submitted by the parties. However, Plaintiff acknowledges receiving this letter and does not dispute that Wilson advised her of her right to appeal his decision at the University level. Plaintiff's First Amended Original Complaint, at 4.

which she had moved in 1990, two years earlier. Plaintiff's Exh. 19 (Owens' Deposition, at 6, 96; Plaintiff's Exh. 20 (May 31, 1992 Letter from Harris to Owens with certified mail envelope marked "return to sender").[3] Notwithstanding her receipt of Provost Wilson's May 11, 1992 letter, Plaintiff argues that she never received notice of termination as required by TSU rules. Plaintiff's Response to Defendant's Motion for Summary Judgment and Cross Motion for Summary Judgment ("Plaintiff's Response"), at 9.

Defendants contend that, during the 1992–93 academic year, Ward and Owens discussed her continuing on the faculty despite the denial of tenure. Defendants' Motion for Summary Judgment, at 4. Defendants further allege that, in the late spring or early summer of 1993, Ward approached Wilson about allowing Owens to continue her employment beyond the terminal year of her employment even though she had been denied tenure. Defendants' Exh. E. (Wilson Deposition), at 60. Plaintiff does not dispute these allegations.

In July 1993, Owens received a letter from Wilson requiring faculty members' attendance at an August 20, 1993 faculty meeting. Owens attended the meeting and afterwards was informed by Wilson that he was in the process of "working on something and when [he] finished with it [he thought] she would be pleased." Wilson Deposition, at 41.[4] In a letter dated August 27, 1993 and approved by Pitre, Ward wrote Wilson "recommending

[the] continuous employment of Dr. Belinda Owens in the Department of Communications, the denial of tenure notwithstanding." Plaintiff's Exh. 17. This recommendation was conditioned on Owens' agreement that she not be "grandfathered into tenure." *Id.*

On September 7, 1993, Wilson presented Owens with an employment contract for the 1993–94 academic year which required her to waive all claim to tenure, whether by "default, de facto, or otherwise." Plaintiff's Exh. 31–A. Owens refused to sign the document. In a letter dated September 8, 1993 (which Defendants maintain was sent together with the employment contract), Wilson informed Owens that she was "illegally attempting to teach classes at [TSU]" and that, effective immediately, Owens was to "cease and desist from any further unauthorized instructional activities at the University." Plaintiff's Exh. 18. Wilson further advised Owens that her employment terminated on May 31, 1993. *Id.*

In a letter dated September 23, 1993, Owens' attorney informed TSU's new president, Joanne Horton ("Horton"), that Owens considered herself a tenured faculty member, and requested a hearing before the Faculty Hearing Committee pursuant to the TSU Faculty manual. Plaintiff's Exh. 30.[5] Owen's request for a hearing was not honored by TSU.[6] Plaintiff's Exh. 1 (Owens Deposition), ¶ 12.

Owens seeks prospective relief under 42 U.S.C. § 1983 as to all Defendants, including

---

3. A September 8, 1993 letter from Wilson to Owens informing her that she was to "cease and desist from any further unauthorized instructional activities at the University," *see* Plaintiff's Exh. 18., appears to have been mailed to the same address as the May 22, 1992 letter but, despite her 1990 move, nonetheless received by Plaintiff. *See* Wilson Deposition, at 79.

4. Apparently, the University thought so too. On August 24, 1993, Pitre wrote Owens to congratulate her for being elected Senator in the TSU Faculty Assembly. Plaintiff's Exh. 26. The term was to run from September 1, 1993 to August 31, 1995. *Id.* Several days later, Ward wrote Owens to thank her for agreeing to direct a Speech Communications Course; Owens' name had already been listed in the Summer/Fall 1993 Class Schedule as teaching four Speech Communication courses that fall. Plaintiff's Exh. 23.]

5. Wilson testified that, when a tenured faculty member is terminated for cause, pursuant to the TSU faculty manual, he or she is entitled to a hearing. Wilson Deposition, at 90. Although Wilson did not indicate to which manual he was referring, this provision is contained in the 1985 faculty manual. *See* Plaintiff's Exh. 11, at 95.

6. Wilson was copied on Plaintiff's counsel's letter to Horton, but it is not clear precisely who refused Plaintiff a hearing. While Wilson allegedly was aware that Owens requested a hearing, Plaintiff does not allege that Wilson actually denied her request for a hearing. Wilson's involvement in the events underlying this lawsuit seems to have ended several weeks earlier, when he wrote to Owens on September 8, 1993.

the Board of Regents and James M. Douglas, current President of TSU, sued only in his official capacity. Specifically, Owens seeks reinstatement with tenure, along with all increments, benefits and other faculty rights. Owens also seeks damages against Wilson, Ward and Pitre for the alleged violation of her procedural and substantive due process rights, and for an alleged conspiracy to cause her to be terminated.

## II. SUMMARY JUDGMENT STANDARD

In deciding a motion for summary judgment, the Court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc); *Bozé v. Branstetter*, 912 F.2d 801, 804 (5th Cir.1990). The facts are to be reviewed with all inferences drawn in favor of the party opposing the motion. *Bozé*, 912 F.2d at 804 (citing *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir.1986)). However, factual controversies are resolved in favor of the non-movant "only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir.), *revised on other grounds upon denial of reh'g*, 70 F.3d 26 (1995).

The party moving for summary judgment has the initial burden of demonstrating the absence of a material fact issue with respect to those issues on which the movant bears the burden of proof at trial. For any matter on which the non-movant carries the burden of proof at trial, however, the movant may, by merely pointing to the absence of evidence supporting the essential elements of the non-movant's case, shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact so as to warrant a trial. *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718–19 (5th Cir.1995); *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 195, 130 L.Ed.2d 127 (1994).

The non-movant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence. *Little*, 37 F.3d at 1075. In the absence of any proof, the Court will not assume that the non-movant could or would prove the necessary facts. *McCallum Highlands*, 66 F.3d at 92; *Little*, 37 F.3d at 1075 (citing *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 888, 110 S.Ct. 3177, 3188, 111 L.Ed.2d 695 (1990)). Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial. *Little*, 37 F.3d at 1075 (citing *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552–53).

## III. DISCUSSION

### A. Due Process Claims

*Procedural Due Process.*—Owens argues that, because TSU failed to give her timely notice of termination as required by the 1985 and 1987 faculty manuals, and treated her as a tenured faculty member notwithstanding the denial of tenure in May 1992, she acquired *de facto* tenure. Plaintiff further argues that, because she had a property interested protected by the Constitution, once she acquired *de facto* tenure, she had a reasonable expectation of continued employment which entitled her to due process, namely the right to a hearing before termination.

■■■■ A public college professor dismissed from an office held under tenure provisions has an interest in continued employment that is safeguarded by due process. *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 576, 92 S.Ct. 2701, 2708–09, 33 L.Ed.2d 548 (1972) (citing *Slochower v. Board of Higher Educ. of City of New York*, 350 U.S. 551, 76 S.Ct. 637, 100 L.Ed. 692 (1956)). However, an abstract need or desire is insufficient to create a property interest. *Id.* at 577, 92 S.Ct. at 2709. To have such an

interest in a benefit, a person must have a legitimate claim of entitlement to it, rooted in an independent source such as state law. *Id.*

Defendants argue that Owens' claim of a property interest in continued employment at TSU is an illegitimate, unilateral expectation which does not trigger procedural due process rights. Defendants contend that, because the Board of Regents took no affirmative action conferring tenure on Owens in accordance with the 1987 faculty manual, she has no property interest in continued employment, and no right to procedural due process.

The 1987 faculty manual explicitly states that tenure may not be granted absent an affirmative act by the Board of Regents:

Tenure is not automatic and be conferred only by the Board of Regents ... A tenure-track probationary faculty member is not guaranteed continued employment beyond the period of his or her current appointment as approved by the Board of Regents. No commitment to employ a tenure-track probationary member beyond the period of his or her current appointment shall have force and effect unless approved by the Board of Regents.

Defendant's Exh. A, at 24–25.

Defendants argue that Owens does not base her claim for tenure on TSU's published, written rules governing tenure or upon any action by the Board of Regents. Defendants further argue that Owens herself acknowledged that the 1987 faculty manual was in effect when she was eligible for tenure, and that the Board took no affirmative action to confer tenure upon her. Defendants' Exh. B (Owens Deposition), at 79–80. Therefore, Defendants argue, because her claim for *de facto* tenure is in conflict with the University policy in effect when she applied for tenure, Owens did not have a reasonable expectation of continued employment when she was terminated in 1993. *See Spuler v. Pickar*, 958 F.2d 103, 107 (5th Cir.1992) (establishment of a formal tenure policy generally precludes a reasonable expectation of continued employment for non-tenured faculty).

Owens argues that she had *de facto* tenure, not under the terms of the 1987 faculty manual, but pursuant to an unwritten policy in effect under the 1985 faculty manual. Owens maintains that, because the faculty manual was revised in 1987, two years after her initial employment with TSU, she had the option of using the tenure standard in the 1985 faculty manual when applying for tenure in 1992. *See* Plaintiff's Exh. 12, 13, 14, 15, and 16. While Plaintiff submits the affidavit testimony of numerous TSU professors to support this contention, *see id.*, Pitre argues that she was unaware of any tenure policy at TSU that allows a faculty member to choose the faculty manual under which she will be considered for tenure. Pitre Affidavit, ¶ 3.

■ Plaintiff thus has established that there is a potentially material fact question as to which manual, and thus which standard, applied when Owens sought tenure in 1992.[7] There is no evidence in the record to suggest that Owens affirmatively opted for the 1985 manual's standard at any point during her 1992 application process or during the 1985–92 tenure-track probationary period, or during the year and a half after she was informed by Provost Wilson about the adverse tenure decision. For example, when Owens received Wilson's letter in May 1992 advising her that he was unable to recommend her for tenure, Owens failed to inform him or anyone else involved in the tenure process that she was opting for the 1985 standard and therefore had obtained *de facto* tenure. It was only as a result of discovery *during this litigation* that Owens learned that she allegedly had the option of following the faculty manual in effect at the time of her employment. Plaintiff's Second Motion for Leave to File Amended Original Complaint Out of Time and Add the President of TSU as a Party in his Official Capacity, at 4.

Even if the 1985 manual is found to govern Owens' tenure application, it is far from clear that that manual lacks a requirement that a grant of tenure requires the express approv-

---

7. Owens is clearly not entitled to tenure if the 1987 manual is found to govern her application. As Plaintiff herself concedes, the Board of Re-

gents took no affirmative action conferring tenure upon her, as explicitly required by the latter manual's written policy.

al of the Board of Regents, as Plaintiff contends. Plaintiff's Response, at 16. Pursuant to the "Policy on Tenure" contained in the 1985 manual, "[w]here the Board of Regents shall refuse to grant tenure, ... the faculty member shall have the right to apply to the Board of Regents for reconsideration within sixty (60) days of the date of notification that tenure was denied." Plaintiff's Exh. 11, at 49. Albeit implicitly, this statement strongly indicates that tenure is conferred by the Board of Regents. In addition, the 1985 manual provides that "[a]ll faculty members who are granted tenure shall receive formal notification of the award of tenure from the University President." *Id.* It is uncontroverted that Owens received no such notification from President Harris. Finally, the 1985 manual provides that "[f]aculty members who have been awarded tenure will not be given contracts ... but shall be given annual notice of salary in lieu of contracts." *Id.* It is undisputed that Owens received an employment contract for the 1992–93 academic year, *see* Plaintiff's Exh. 22, which belies her claim to and the University's intention to award her tenure under the standard in effect in 1985.

Despite the Court's tentative interpretation of the language of the 1985 manual, the Court finds itself unable to grant judgment as a matter of law in favor of Defendants on the factual record presented. Plaintiff has demonstrated the existence of a fact issue as to the University's practices as to the tenure

policy in the 1985 manual. When asked about the meaning of the phrase "grandfathered into tenure" in his August 27, 1993 letter to Wilson,[8] Ward testified that "[t]he older manuals stipulated that after a time period that a person was there that that person would be grandfathered into tenure." Ward Deposition, at 67. By the "older manuals," according to Ward, he meant the one "before '87," *id.* (presumably the 1985 manual). Ward further testified that "default tenure," used interchangeably with "grandfathered into tenure," *id.* at 57, was acquired when a person who had been at TSU over a period of time accidentally got tenure because the University failed to fulfill certain notice requirements. *Id.* at 56–57.[9]

█ Plaintiff also argues that she acquired *de facto* tenure because TSU violated the "timely notice" provisions in the faculty manual. Specifically, Plaintiff alleges that Defendants notified her of her right to apply for tenure one year late,[10] and that she never received Harris's letter informing her that her application for tenure had been denied.[11]

Defendants characterize the 1991–92 academic year as the sixth year of Owens' probationary period and therefore maintain that notice regarding her tenure application was timely. Defendants' Motion for Summary Judgment, at 3. Although this calculation is unexplained, Defendants may not be counting Owens' first year at TSU because she was hired in October 1985, after the start of

8. Ward recommended Owens for continuous employment at the start of the 1993–94 academic year, based on the condition that she agree not to be "grandfathered into tenure." Plaintiff's Exh. 31.

9. The Court notes in passing that Wilson's testimony regarding notice requirements and tenure directly contradicts Ward's. Wilson testified in reference to Ward's August 1993 letter that not being "grandfathered into tenure" had nothing to do with the fact that Owens may or may not have received her notice in a timely manner. Wilson Deposition, at 78.

10. Owens was hired in October 1985 and argues that her sixth or penultimate year was the 1990–91 academic year. Therefore, Plaintiff argues, notice in December 1991 that she should apply for tenure was not given during the penultimate

year of her probationary service, as required by TSU's tenure policy.

11. Both the 1985 and 1987 faculty manuals provide that, no later than December 1st of the next-to-last year of probationary service, the Dean of each school shall notify all faculty members who are entering their final year of probationary service of their status and of the procedures and requirements for granting tenure. Plaintiff's Exh. 11, at 48–49; Defendant's Exh. A, at 26. If tenure is denied, the Office of the President shall notify the faculty member no later than May 1st (or under the 1987 manual twelve months before the expiration of the probationary appointment) of the next-to-last year of probationary service that the subsequent academic year will be his/her last year of employment. Plaintiff's Exh. 11, at 49; Defendant's Exh. A, at 26.

the fall semester.[12] Because the summary judgment record does not establish with certainty when the penultimate year of Owens' probationary service began, a fact question exists as to whether Defendants violated the timely notice provisions in the faculty manuals regarding tenure application and denial. A fact question also exists as to whether Owens received adequate notice and what the ramifications are if the notices were untimely.[13]

Notwithstanding the foregoing, the Court notes that procedural due process entitles Plaintiff to a hearing. It is unclear to this Court that tenure, a lifetime contract, is the legal remedy for violation of this right, even if Plaintiff should prevail on this claim.

*Substantive Due Process.*—Plaintiff alleges a substantive due process claim, although the factual basis for this claim is not articulated in either Plaintiff's Response or her amended complaint.[14]

■ To state a substantive due process claim, a plaintiff must show that the government's deprivation of a property interest was arbitrary or not reasonably related to a legitimate governmental interest. *Williams v. Texas Tech. Univ. Health Sciences Ctr.,* 6 F.3d 290, 294 (5th Cir.1993), *cert. denied,* 510 U.S. 1194, 114 S.Ct. 1301, 127 L.Ed.2d 652 (1994).

■ Summary judgment is precluded on Plaintiff's substantive due process claim because a fact question exists as to whether Plaintiff had an antecedent property interest in continued employment at TSU, as discussed above.

*Deprivation of Liberty Interest.*—Plaintiff alleges that she was deprived of liberty without due process. Specifically, Plaintiff alleges that dismissal during the school year stigmatized her reputation.

■ The liberty protected by the due process clause encompasses an individual's freedom to work and earn a living. *Wells v. Doland,* 711 F.2d 670, 676 (5th Cir.1983). A public employer may unconstitutionally deprive its employee of a liberty interest if it discharges her under stigmatizing circumstances without giving the employee an opportunity to clear her name. *Arrington v. County of Dallas,* 970 F.2d 1441, 1447 (5th Cir.1992). To assert a claim for the deprivation of this constitutional right to a name-clearing hearing, a plaintiff must allege that she was a public employee, that she was discharged, that stigmatizing charges were made against her in connection with her discharge, that the charges were false, that the charges were made public, that she requested a name-clearing hearing, and that the hearing was denied. *Id.*

■ Plaintiff fails to state a claim for deprivation of a liberty interest. Although she asserts that dismissal during the school year stigmatized her reputation, she does not allege that Defendants made stigmatizing or false charges against her in connection with her discharge. Moreover, Plaintiff does not allege that any allegedly stigmatizing charges were publicized. The only statement made by Defendants in connection with Plaintiff's termination was the September 8, 1993 letter from Wilson to Owens that stated that Owens was "illegally attempting to teach classes at [TSU] without permission." Plaintiff's Exh. 18. This letter was not publicized. Wilson Deposition, at 79.[15] Finally, Plaintiff

---

12. The 1987 manual provides that, for the purpose of calculating the period of probationary service, an academic year shall consist of two long semesters (*i.e.,* the fall semester and the spring semester). Defendants' Exh. A, at 25.

13. It is unclear whether Owens ever received Harris's letter, and whether, because it was sent to an address from which Owens had moved two years earlier, this notification from the President constituted notice "reasonably calculated to succeed," as required by both versions of the faculty manual. *See* Plaintiff's Exh. 11, at 50; Defendant's Exh. A, at 25. The legal effect of these putative errors, however, is an open issue for the

Court, since there is no question that Owens received Provost Wilson's May 11, 1992 letter.

14. Prior to a discussion of substantive due process case law, Plaintiff simply alleges that, "[i]n addition to her procedural due process rights, Owens contends the Employers violated her substantive due process rights." Plaintiff's Response, at 21.

15. The copies that Ward and Pitre received letter of this letter do not constitute publication. In the Court's view, this letter was not "made public," because there was no disclosure to people

has not alleged that Defendants made any charges that seriously damaged her standing and association in the community or foreclosed her freedom to take advantage of other employment opportunities. *See Wells,* 711 F.2d at 676 n. 7. Therefore, summary judgment is granted in favor of Defendants, and Plaintiff's liberty interest claim is dismissed.

## B. *Qualified Immunity*

 Qualified immunity shields government officials performing discretionary functions from liability for suits for damages brought against them in their individual capacities, unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Gibson v. Rich,* 44 F.3d 274, 277 (5th Cir.1995). In examining an official's claim of qualified immunity, courts follow a two-step process. The first step is to ascertain whether the plaintiff alleges "the violation of a clearly established constitutional right." *Siegert v. Gilley,* 500 U.S. 226, 231, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991). The second step is to decide whether the defendant's conduct was objectively reasonable in light of the legal rules clearly established at the time of the incident. *Gunaca v. State of Tex.,* 65 F.3d 467, 473–74 (5th Cir.1995); *Salas v. Carpenter,* 980 F.2d 299, 305 (5th Cir. 1992). Even if an official's conduct violated a clearly established constitutional right, he is entitled to qualified immunity if the conduct was objectively reasonable. *Salas v. Carpenter,* 980 F.2d at 310. Whether such conduct violated clearly established law, so as to preclude the application of qualified immunity, is essentially a legal question. *White v. Taylor,* 959 F.2d 539, 544 (5th Cir.1992), citing *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985).

The Court finds that each of the defendants sued in their individual capacities are shielded from suit by qualified immunity. Although there is a fact question as to whether Plaintiff's due process rights were

violated, Defendants' conduct was objectively reasonable in light of the legal rules clearly established at the time of Owens' termination.

 First of all, there is no evidence in the record that Wilson, Ward or Pitre believed that Owens had any faculty status other than non-tenured during the time period relevant to this lawsuit. All three recommended denial of tenure. By letter dated May 11, 1992, Wilson advised Owens that he was unable to recommend her for tenure at TSU. Pitre testified that, at all times during her discussions with Wilson and Ward about allowing Owens to remain on the faculty, it was her belief that Owens had been denied tenure. Pitre Deposition, ¶ 6. Wilson testified that he believed that Owens had been denied tenure because she had fallen short in publications and grantsmanship. Wilson Deposition, at 20. Wilson further testified that his reference to Owens' "illegally teaching" at TSU in his September 8, 1993 letter to Plaintiff was based on the "fact" that she was not a faculty member and that she had been terminated effective May 31, 1993. *Id.* at 38. Ward testified that he believed that Owens had been given proper notice of TSU's decision not to award her tenure (and, by implication, that she had not acquired de facto tenure). Ward Deposition, at 70. Moreover, Ward recommended Owens' continuous employment at TSU with the understanding that she had been denied tenure. *See* Plaintiff's Exh. 31.

Second, there is no evidence in the summary judgment record that Owens ever advised Defendants that she opted to use the tenure standard in effect at the time of her initial employment in 1985. When Owens received Wilson's letter in May 1992 advising her that he was unable to recommend her for tenure, Owens did not inform him or anyone else involved in the tenure process that (i) she elected to apply for tenure under the 1985 faculty manual, or (ii) that she had, in her opinion, obtained *de facto* tenure. Neither did Owens avail herself of the opportunity to appeal Wilson's decision at the Univer-

---

outside these individuals who were in the chain of command and were directly responsible for

the tenure decision-making process.

sity level. It was not until September 23, 1993 that Plaintiff's counsel informed the University that Owens considered herself a tenured faculty member. *See* Plaintiff's Exh. 33. This was several weeks after the alleged involvement of the individual Defendants had ended.

Owens herself concedes that the 1987 faculty manual was in effect when she applied for tenure. *See* Owens Deposition, at 79. Moreover, Pitre testified that all decisions regarding tenure faculty requests during her tenure as Dean of the College of Arts and Sciences were governed by that same manual. Pitre Deposition, at 2.

Finally, since there had been no affirmative act by the Board of Regents conferring tenure upon Owens, Defendants had no reason to believe that Owens had been granted or otherwise acquired tenure.

Therefore, the belief of Defendants sued in their individual capacity that Plaintiff had been denied tenure in May 1992 was objectively reasonable. There is no genuine question of material fact as to the individual Defendants' defense of qualified immunity, and summary judgment is granted in these Defendants' favor. Plaintiff's claims for relief against the individual Defendants are therefore dismissed.

### C. *Conspiracy Claim*

Plaintiff alleges that Wilson, Ward and Pitre conspired to cause her to be terminated and did, in fact, cause her to be terminated.

To prevail on a Section 1983 conspiracy claim, a plaintiff must establish: (1) the existence of a conspiracy involving state action; and (2) a deprivation of her civil rights in furtherance of the conspiracy by a party to the conspiracy. *Pfannstiel v. City of Marion,* 918 F.2d 1178, 1187 (5th Cir. 1990). A conspiracy claim is not actionable without an actual violation of Section 1983. *Id.*

The defense of qualified immunity is applicable to conspiracy claims under Section 1983. *Id.* Only if Defendants' conduct is determined not to be objectively reasonable should the Court look to whether

their actions were taken pursuant to a conspiracy. *Id.*

Although a fact question exists as to whether Section 1983 was violated, the Court finds that Wilson, Ward and Pitre are qualifiedly immune from Plaintiff's conspiracy claim. In light of their reasonable belief that Owens had been denied tenure, Defendants' attempts to negotiate an employment agreement that attempted to preclude contentions by Plaintiff of *de facto* tenure were objectively reasonable.

Defendants' attempts to prolong Owens' employment at TSU suggest a good faith effort to prevent, rather than effect, Plaintiff's termination. The denial of tenure notwithstanding, Wilson, Ward and Pitre all attempted to extend the period of Owens' employment at TSU beyond the seven year probationary period. At the August 1993 faculty meeting, Wilson informed Owens that he was in the process of "working on something and when [he] finished with it [he thought] she would be pleased." Wilson Deposition, at 41. The following week, Ward wrote Wilson "recommending [the] continuous employment of Dr. Belinda Owens in the Department of Communications, the denial of tenure notwithstanding." Plaintiff's Exh. 17. Ward's letter to Wilson was approved by Pitre. These actions belie Plaintiff's argument that Defendants conspired to cause her termination. Therefore, Defendants are entitled to qualified immunity on Plaintiff's conspiracy claim under Section 1983, and that claim is dismissed.

### D. *Eleventh Amendment Immunity*

Wilson, Ward and Pitre are shielded from suit by qualified immunity and, therefore, Plaintiff's individual capacity claims against them are dismissed, as noted above. Although Plaintiff also alleges official capacity claims against these Defendants, they are not necessary parties to this action, because Plaintiff's surviving claims are for injunctive relief against the Board of Regents and the University president. Therefore, they are dismissed as Defendants from this lawsuit.

Pursuant to the doctrine of *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), a federal court is not

barred by the Eleventh Amendment from enjoining state officers from acting unconstitutionally, either because their action is alleged to violate the Constitution directly or because it is contrary to a federal statute or regulation that is the supreme law of the land. 17 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4232 (2d ed. 1988). The essential ingredients of the *Ex parte Young* doctrine are that a suit must be brought against individual persons in their official capacities as agents of the state and the relief sought must be declaratory or injunctive in nature and prospective in effect. *Saltz v. Tennessee Dep't of Employment,* 976 F.2d 966, 968 (5th Cir.1992).

The Court by this Memorandum and Order allows Plaintiff to amend her complaint in order to assert her due process claims for injunctive relief, or reinstatement, against James Douglas, the current president of TSU. This amendment is permissible under the doctrine of *Ex parte Young.*

The Board of Regents, however, is improperly named as a defendant. The Board per se is not an individual person sued in her official capacity. Nor is it a state "agency." It is unclear why Plaintiff has sued the Board as an entity rather than an individual member of the Board. Therefore, the Court will substitute as a party defendant the Chair of the Board of Regents for the Board.

## IV. *ORDER*

1. Defendants' Motion for Summary Judgment [Doc. # 19] is GRANTED in part and DENIED in part.

 (a) Plaintiff's liberty interest claim under the due process clause and her conspiracy claim under Section 1983 are DISMISSED.

 (b) Wilson, Ward and Pitre are DISMISSED as Defendants from this lawsuit.

 (c) Plaintiff's only surviving claims are for injunctive relief against the Chair of the Board of Regents and President James Douglas in his official capacity.

2. Plaintiff's Second Motion for Leave to File Amended Original Complaint out of time and to add the President of Texas Southern University as a Party in his Official Capacity [Doc. # 41] is GRANTED.

3. Defendants' Motion for Continuance of Trial Setting and Request for Preferential Setting [Doc. # 37] is GRANTED IN PART. This case is set for a bench trial on July 24, 1996, at 9:00 a.m. in Courtroom 9–F, 515 Rusk Street, Houston, Texas.

 (a) Each side will be allowed a maximum of eight hours trial time. Cross-examination of opposing parties' witnesses will count as part of the questioner's trial time, as will opening and closing arguments.

 (b) Trial exhibits must be pre-marked and exchanged no later than July 19, 1996. Objections to exhibits shall be filed with the Court on July 22, 1992. Courtesy copies of all exhibits and objections shall be provided to the Court on July 22, 1996.

 (c) The parties shall each submit proposed findings of fact and conclusions of law on or before July 22, 1996, addressing every element of each claim that Plaintiff intends to pursue at trial.

 (d) The Court will accept as part of a witness's direct testimony at trial the summary judgment affidavits (or parts thereof) the parties choose to offer, so long as any such proffered witness is available for cross-examination at trial.

 (e) The only issues before the Court are (i) whether the 1985 or the 1987 faculty manual governed Plaintiff's application for tenure, (ii) whether the 1985 manual may be interpreted as permitting *de facto* tenure, (iii) the historical basis for Plaintiff's claim of *de facto* tenure at TSU, and (iv) whether the circumstances surrounding Plaintiff's continued employment at TSU after she was informed in May 1992 that tenure had been denied, gave rise to a procedural or substantive due process violation for which reinstatement or other prospective injunctive relief is warranted.

4. Plaintiff's Cross Motion for Partial Summary Judgment [Doc. # 29] is DENIED.

5. Plaintiff's Motion to Vacate Certain Portions of Order entered June 5, 1996 [Doc. # 40] is GRANTED.